**BENCHMARK ENGINEERING CORPORATION, Appellant**

v.

**SAM HOUSTON RACE PARK, Appellee.**

No. 14–08–01167–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 29, 2010.

Rehearing Overruled July 29, 2010.

David H. Melasky, Houston, for appellant.

Roy Alan Camberg, Jerry Pat Hughes Jr., Michael Chenier Sanders, Richard P. Hogan, Jr., Jennifer Bruch Hogan, Houston, for appellee.

Panel consists of Justices SEYMORE, BROWN, and SULLIVAN.

## OPINION

CHARLES W. SEYMORE, Justice.

This appeal involves construction of a statute in which the legislature prescribed the content of a certificate of merit or affidavit required to pursue a cause of action for negligence against architects or engineers. *See* Tex. Civ. Prac. & Rem. Code § 150.001 et seq.[1] Appellant, Bench-

---

1. Chapter 150 of the Texas Civil Practice and Remedies Code as modified by the 79th Texas

mark Engineering Corporation ("Benchmark"), contends the trial court erred by denying its motion to dismiss for want of jurisdiction because (1) appellee, Sam Houston Race Park ("the Park"), failed to include the factual basis for professional-negligence claims in its certificate of merit, and (2) the certificate of merit is supported by the affidavit of an engineer who is not qualified to render certain expert opinions. We affirm.

## I. BACKGROUND

During the year 2007, the Park developed an outdoor concert venue within the infield area of its horse-racing facility. Benchmark was contracted to provide design and engineering services for the project. Other contractors were retained to perform the actual construction. Provisions for water drainage were contemplated in the design and engineering portion of the project. Sometime after the project was completed, the Park became dissatisfied with the effectiveness of water drainage at the construction site.

In May 2008, the Park sued Benchmark and other entities, alleging breach of contract, breach of express and implied warranties, negligence, negligent misrepresentation, and fraud. Relevant to this appeal, the Park alleges Benchmark was negligent in the design and construction of subsurface drainage for the infield. The Park attached a certificate of merit to its original petition as required under section 150.002(a). *See* Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 2, 2005 Tex. Gen.

Laws 348, 348 (amended 2009); Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 369–70 (amended 2009). The Park's designated engineer, Ed Ulrich, included the following averments and opinions in his affidavit:

> Benchmark Engineering was negligent in the design and construction of the subsurface drainage at Sam Houston Race Park. Benchmark Engineers failed to make a detailed and thorough analysis of the subsurface conditions at the venue. The current design and construction resulted in site changes holding water and slow draining. . . . Also, there was no installation of a subsurface drainage system which would permit the concert venue area to drain and allow for concerts to proceed.

In response, Benchmark filed a motion to dismiss for want of jurisdiction pursuant to section 150.002(d), alleging numerous defects in the Park's affidavit and certificate of merit. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 369–70 (amended 2009) (providing that failure to satisfy the above requirements "shall result in dismissal of the complaint against the defendant").

Following a hearing, the trial court denied the motion. Benchmark filed this interlocutory appeal.

## II. ISSUES AND STANDARD OF REVIEW

Section 150.002(a) of the Texas Civil Practice and Remedies Code provides,

Legislature is the version applicable to the subject certificate of merit. *See* Act of May 12, 2005, 79th Leg., R.S., ch. 189, §§ 15, 2005 Tex. Gen. Laws 348, 348 (amended 2009) (current version at Tex. Civ. Prac. & Rem.Code § 150.001 et seq. (Vernon Supp. 2009)); Act of May 18, 2005, 79th Leg., R.S., ch. 208, §§ 2, 4–5, 2005 Tex. Gen. Laws 369, 369–70 (amended 2009) (current version at

Tex. Civ. Prac. & Rem.Code § 150.001 et seq. (Vernon Supp.2009)). We note that the Act of May 12, 2005 and the Act of May 18, 2005 must be read in conjunction to appreciate the version of chapter 150 as modified by the 79th Texas Legislature. For purposes of this opinion, we refer to sections of chapter 150 as they appeared following the 79th Texas Legislature, unless otherwise indicated.

In any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party licensed architect, registered professional land surveyor, or licensed professional engineer competent to testify, holding the same professional license as, and practicing in the same area of practice as the defendant, which affidavit shall set forth specifically at least one negligent act, error, or omission claimed to exist and the factual basis for each such claim. The third-party professional engineer, registered professional land surveyor, or licensed architect shall be licensed in this state and actively engaged in the practice of architecture, surveying, or engineering.

Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348 (amended 2009); Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 369–70 (amended 2009).

Benchmark contends the Park did not fulfill the requirements in section 150.002(a) for the following reasons: (1) Ulrich failed to provide the "factual basis" for each of the Park's allegations of negligence in the Park's certificate of merit; and (2) Ulrich failed to provide evidence that he practiced engineering related to drainage design.

A trial court's order granting or denying a motion to dismiss under chapter 150 of the Texas Civil Practice and Remedies Code is interlocutory and appealable. Tex. Civ. Prac. & Rem.Code Ann. § 150.002(f) (Vernon Supp.2009) (expressing same law regarding interlocutory appeals as section 150.002(e) in the version modified by the 79th Texas Legislature). We review denial of a defendant's motion to dismiss pursuant to section 150.002 un-

der an abuse-of-discretion standard. *Landreth v. Las Brisas Council of Co–Owners, Inc.,* 285 S.W.3d 492, 496 (Tex.App.-Corpus Christi 2009, no pet.); *Consol. Reinforcement, L.P. v. Carothers Executive Homes, Ltd.,* 271 S.W.3d 887, 891 (Tex. App.-Austin 2008, no pet.); *Criterium–Farrell Eng'rs v. Owens,* 248 S.W.3d 395, 397 (Tex.App.-Beaumont 2008, no pet.); *Palladian Bldg. Co. v. Nortex Found. Designs, Inc.,* 165 S.W.3d 430, 433 (Tex.App.-Fort Worth 2005, no pet.). An abuse of discretion occurs when the trial court acts in an unreasonable and arbitrary manner or without reference to any guiding rules or principles. *Palladian,* 165 S.W.3d at 433 (citing *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985)). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court does not demonstrate an abuse of discretion. *Id.* However, a clear failure by the trial court to analyze or apply the law correctly also constitutes an abuse of discretion. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

Statutory construction is a question of law we review *de novo. See Consol. Reinforcement,* 271 S.W.3d at 891 (citing *City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 25 (Tex.2003)). We construe statutory language to ascertain and effectuate legislative intent, and we consider the plain and common meaning of each word in the statute. *Tex. Mut. Ins. Co. v. Sonic Sys. Int'l, Inc.,* 214 S.W.3d 469, 476 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). We also view statutory terms in context and give them full effect. *Id.* We presume every word of a statute was used for a purpose, and every word excluded from a statute was excluded for a purpose. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981); *Eastland v. Eastland,* 273 S.W.3d 815, 821 (Tex.App.-

Houston [14th Dist.] 2008, no pet.). Finally, in determining the plain meaning of a statute, we read the words in context and construe the language according to the rules of grammar and common usage. *See* Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005).

## III. ANALYSIS

### A. "Factual Basis" for the Park's Claims

In support of its first issue, Benchmark directs this court to *Criterium–Farrell Engineers,* 248 S.W.3d 395. The Beaumont Court of Appeals reviewed a trial court's order denying a motion to dismiss pursuant to chapter 150 and addressed whether the plaintiffs certificate of merit satisfied section 150.002(a). *Id.* at 396. Despite the fact that the certificate of merit contained several specific examples of negligent acts or omissions based upon highly technical observations, measurements, and analysis, the appellant argued the certificate was insufficient because the affiant-engineer failed to state that the defendant was "negligent." *Id.* at 397–99. In his affidavit, the engineer stated the following: "(1) the inspector erred in measuring the first floor elevation; (2) had the engineer accurately measured the slope, the report would have concluded that repairs were warranted by CFE's

own reported standards; (3) CFE omitted an inspection of the residence's second floor which should have been performed; and (4) had the second-floor inspection been performed, a prudent engineer would have discovered the excessive slope." *Id.* at 400. The court properly affirmed the trial court's order denying the motion to dismiss and explained that "the purpose of the certificate of merit is to provide a basis for the trial court to conclude that the plaintiff's claims have merit." *Id.* at 399. The court also held that "the certificate of merit must necessarily address the applicable standard of care and the defendant's failure to meet the standard." *Id.* at 400. Benchmark argues this holding should be applied in the present case. Benchmark contends Ulrich was required to include or explain the standard of care for design and construction of a water drainage system and describe how Benchmark deviated from that standard.

 Although we agree with the Beaumont court's ultimate disposition, we disagree with the holding on which Benchmark relies. The legislature has amended chapter 150 three times since it was enacted in 2003 and sought to broaden its application in each amendment.[2] The legislature did not incorporate a "standard of care" requirement for certificates of merit in any of the amendments. The plain lan-

---

**2.** H.B. 854 expanded application of chapter 150 to include registered professional land surveyors. *See* Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348 (amended 2009). H.B. 1573 further expanded the scope of chapter 150 to include, among other matters, (a) allegations of damages brought in arbitration proceedings, and (b) damages arising out of the rendition of professional services (as opposed to allegations only of professional negligence). Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 369–70 (amended 2009). S.B. 1201 broadened the scope of chapter 150 by (a) including registered land-

scape architects, (b) reducing the affiant's qualification requirement from "practicing in the same area" as the defendant to "knowledgeable" in the same area as the defendant, and (c) expanding the affidavit requirement to set forth "for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service...." *See* Act of May 29, 2009, 81st Leg., R.S., ch. 789, § 2, 2009 Tex. Gen. Laws 1991, 1991–92 (codified at Tex. Civ. Prac. & Rem.Code § 150.001 et seq. (Vernon Supp.2009)).

guage of chapter 150 does not impose such a specific requirement. As indicated above, we follow the rule of construction that every word excluded from a statute must also be presumed to have been excluded for a purpose. *Cameron*, 618 S.W.2d at 540; *Eastland*, 273 S.W.3d at 821. Accordingly, we hold Ulrich's affidavit is not insufficient for failure to incorporate or refer to the "standard of care" when describing the "factual basis" for each claim of negligence.

In support of its argument that the Park's expert failed to provide a "factual basis," Benchmark asserts, "No mention is made to what should have been included in 'a detailed and [thorough] analysis' of the subsurface conditions nor what analysis Benchmark did and how Benchmark's analysis is deficient." Benchmark also complains, "Mr. Ulrich fails to provide an explanation as to what sampling, testing, measurements, data accumulation and computations were allegedly required in this situation as compared to what Benchmark did to make its subsurface analysis." Benchmark further asserts, "[T]here is no mention of the proper standard for the design and construction of the facilities such as the correct computational methods for drainage design at this facility, what the design drainage flow rates should [have] been, what the drainage rate is, what kind of testing or physical investigation should have been done for a proper engineering approach to the drainage design and what data should have been used as a basis for a proper drainage design." Finally, in furtherance of its argument that a standard of care must be included in a certificate of merit, Benchmark complains, "The affidavit does not state what an appropriate drainage system for the concert area should have been, the design criteria for such a system, the data which should

have been collected to effectuate a design and the correct engineering analysis which should have been employed."

Generally, the theme of Benchmark's complaint on appeal is Ulrich's failure to refer to a standard of care. For example, Benchmark complains as follows: (1) "Thus[,] there is no specified standard of care for an effective analysis of subsurface conditions and certainly no explanation as to how the acts of Benchmark deviated from the standard of care"; (2) "Thus, there is no specificity to why the current design is inadequate by explaining what the drainage rate should have been versus what it is currently and what about the Benchmark design fails to meet a standard of care"; and (3) "By not specifying design parameters, the design criteria, the correct engineering analytical methods or the correct data collection and/or physical testing and the analysis of same so as to demonstrate what would constitute a viable engineering approach to the design and analysis, . . . Mr. Ulrich's opinion in the alleged certificate of merit fails to establish any standard of care from which to determine whether the action[s] of Benchmark were negligent."

As stated above, we respectfully disagree with our sister court in Beaumont and hold that there is no requirement under section 150.002 for an expert to refer to a standard of care in the certificate of merit. *See Criterium–Farrell Engineers*, 248 S.W.3d at 400.[3] Accordingly, we reject Benchmark's standard-of-care arguments.

■ Next, we address Benchmark's complaints that certain portions of Ulrich's report are ambiguous or conclusory. Benchmark cites *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 242 S.W.3d 67 (Tex.App.-San Antonio 2007, pet. denied).

**3.** See progression of chapter 150 as explained in footnote 2, *supra.*

However, the San Antonio Court of Appeals addressed the quality of evidence presented during a hearing on damages following entry of a post-answer default judgment. *Id.* at 73–74. The court correctly concluded that conclusory testimony will not support a damages award and cited several cases for the proposition that an expert opinion must be more than *"ipsi dixit."* *Id.* at 74. The generis of these cases and other cases cited by Benchmark pertain to whether expert testimony is competent in summary-judgment proceedings or admissible at trial. This case does not present the question of whether Ulrich's averments and opinions are competent as evidence. There is no such requirement within the plain language of the statute *sub judice.* Moreover, we are not persuaded that Benchmark's reliance on requirements for the content of expert reports under the very explicit Texas Medical Liability and Insurance Improvement Act ("MLIIA") are analogous. *See* Tex. Civ. Prac. & Rem.Code §§ 74.351 (Vernon Supp.2009), 74.401 & 74.402 (Vernon 2005). In *Kettle v. Baylor Medical Center at Garland,* 232 S.W.3d 832, 839–41 (Tex.App.-Dallas 2007, pet. denied), the court concluded that certain portions of an expert report were conclusory because the expert did not specify the standard of care for a particular procedure and addressed the conduct of multiple defendant physicians relative to one standard of care. Unlike section 74.351 of the MLIIA, the statute under consideration here does not require the expert to address standard of care, breach, and causal relationship. *Compare* Tex. Civ. Prac. & Rem.Code § 74.351, *with* Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348 (amended 2009), *and* Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 369–70 (amended 2009).

Finally, we acknowledge the requirement in section 150.002(a) that the Park's engineer must be "competent to testify." *See* Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348 (amended 2009); Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 369–70 (amended 2009). However, the legislature did not include a requirement that statements in a certificate of merit must be competent as evidence when the affiant provides the "factual basis" for claims. *See id.*

■ After addressing Benchmark's concerns about standards of care and the evidentiary quality of language in a certificate of merit, we now address Benchmark's contention that Ulrich failed to satisfy the requirements of section 150.002(a) because he did not "set forth specifically at least one negligent act" by Benchmark, along with "the factual basis for … such claim." *See id.* The Park asserts that Ulrich identified three negligent acts by Benchmark and supplied the required "factual basis" for each claim.

The legislature did not provide a definition of "factual basis" in chapter 150. *See* Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348 (amended 2009); Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 369–70 (amended 2009). Consequently, we employ the rules of construction set forth above and determine legislative intent first by application of the "plain meaning" rule. *See In re Am. Homestar of Lancaster, Inc.,* 50 S.W.3d 480, 486–87 (Tex.2001). "If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex.1999). "Further, if a statute is unambiguous, rules of construc-

tion or other extrinsic aids cannot be used to create ambiguity." *Id.* at 865–66.

■ The plain meaning of the word "factual" is "of, relating to, or concerned with facts." Webster's Third Int'l Dictionary 813 (1993). The word "fact" is defined as "[a]n actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation. . . ." Black's Law Dictionary 628 (8th ed.2004). Thus the plain meaning of the statute requires an affiant to describe the facts giving rise to the claim. We determine the sufficiency of Ulrich's affidavit with this plain and understandable guide.

Ulrich stated that he (a) reviewed plans for construction of paving, grading and drainage systems for the project prepared by Benchmark, (b) reviewed the Park's unit price schedules, GrassPave[4] information, electrical drawings, architectural site plans and other "typical details" for such a project, and (c) discussed the scope of the project with a Park staff member. He described three areas of engineering negligence: (1) failure to design an adequate subsurface drainage system; (2) failure to make a detailed and thorough analysis of subsurface conditions; and (3) failure to install a subsurface drainage system. He observed that (1) the design and construction resulted in the site's "holding water and slow draining," (2) "there was no installation of a subsurface drainage system which would permit the concert venue area to drain and allow for concerts to proceed," and (3) "Benchmark Engineering's design does not contain a subsurface drainage system that complies with the customers [sic] requirements."

We agree with Benchmark that the language employed by Ulrich is, at least, am-biguous. However, under these unique facts, the ambiguity is not fatal to the certificate of merit. In this case, the trial court was free to decide whether language in the affidavit referred to negligence in designing and constructing a drainage system or wholesale failure to design or construct a drainage system. In other words, the language allows for two interpretations: (1) either Benchmark undertook to install a subsurface drainage system but did so negligently or (2) Benchmark simply did not install a system. Considering our standard of review, we hold the trial court did not abuse its discretion if it concluded Ulrich adequately described the factual basis for the Park's claims by stating that Benchmark did not install a subsurface drainage system. We agree with the Park that it is difficult to identify or describe a more "factual basis" if one of its claims is the wholesale failure to design or construct a subsurface drainage system.

For all the reasons outlined above, we hold the trial court could have reasonably concluded the Ulrich affidavit contained a description of at least one negligent act, error or omission, and the factual basis for that claim. *See* Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348 (amended 2009); Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 369–70 (amended 2009). Therefore, the trial court did not abuse its discretion in concluding that the Park's certificate of merit satisfied the requirements of section 150.002(a). *See Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex.2003). We overrule Benchmark's first issue.

**B. Ulrich's Qualifications**

■ In issue two, Benchmark complains that Ulrich is not qualified to provide an

---

4. The record indicates that GrassPave is an artificial surface used in the construction of the venue.

engineer's certificate or expert opinion regarding drainage design. Specifically, Benchmark contends Ulrich has not demonstrated that he practices in the same area as Benchmark.[5]

Benchmark argues that the Texas Board of Professional Engineers has recognized water resources as an engineering subspecialty which includes drainage as a distinct practice area within civil engineering. In support of its argument, Benchmark directs us to *Landreth,* the only case addressing this issue to date. In *Landreth,* the Corpus Christi Court of Appeals considered the qualifications of an affiant-architect under section 150.002(a). 285 S.W.3d at 497–500. The court held that an initial affidavit did not fulfill the requirements of section 150.002(a) because the affiant did not state or otherwise demonstrate that he was practicing in the same area as the defendant. *Id.* at 499–500. Importantly, the court noted that section 150.002(a) focuses on the defendant's area of practice, not on the area of practice relevant to the claim. *Id.* at 499. We conclude the situation in this case is distinguishable. Ulrich did not plainly state that he practices engineering in the same area of practice as Benchmark; however, Ulrich's affidavit and resume provided the trial court with ample information reflecting the fact that he practices in the same area of construction or "project" engineering as Benchmark.

Benchmark suggests the legislature requires the affiant to demonstrate that he practices in the same the area of engineering that pertains to the alleged negligent act. That interpretation conflicts with the plain meaning of the language in the stat-

ute. *See* Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348 (amended 2009); Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 369–70 (amended 2009). Accordingly, we reject Benchmark's argument that Ulrich was required to aver he practices in an engineering subspecialty identified as "drainage and drainage design." Pursuant to the plain language in section 150.002(a), we examine Ulrich's certificate of merit, which includes his affidavit and resume, and compare his areas of practice with identifiable areas of civil engineering practiced by Benchmark.

The Park contends Ulrich's affidavit and resume establish the fact that he practices engineering in one or more of Benchmark's areas of practice. According to Ulrich's resume, he practices in the broad area of project engineering which includes ground preparation, foundation, and building design. During his career, he performed engineering work on numerous construction projects, including the design specifications and detailing associated with those projects. Apparently, he has won various engineering awards in connection with soil preparation and foundation design, including the 1990 ASCE Thomas A. Middlebrook Award for "Tieback Supported Cuts in Overconsolidated Soils." He is a member of the Earth Retaining Structures Committee of the American Society of Engineers. Moreover, he has written and published various engineering articles pertaining to site preparation and excavation for construction of buildings. Ulrich stated that he reviewed "[p]lans for construction of paving, grading and drainage system for Sam Houston Race Park in Harris County, prepared by Benchmark

---

5. The Texas Legislature recently modified the statute, requiring only that the affiant "is *knowledgeable* in the area of practice of the defendant...." Act of May 29, 2009, 81st Leg., R.S., ch. 789, § 2, 2009 Tex. Gen. Laws

1991, 1992 (codified at Tex. Civ. Prac. & Rem.Code § 150.002(a) (Vernon Supp.2009)) (emphasis added). This modified requirement was not effective before September 1, 2009.

**50**

Engineering Corp." It suffices to note that the project which is the subject of this suit is or was a construction site, and the contemplated improvements were to be occupied by persons attending concerts at the Park. In fact, the "paving" and "grading" plans described in Ulrich's affidavit resemble some of the work identified by Ulrich in his extensive resume.

Benchmark's areas of engineering practice are more difficult to ascertain.[6] There is no specific statement regarding Benchmark's engineering practice areas either in pleadings or briefing. However, the trial court is not required to ignore the obvious: Benchmark provided design and construction engineering for a construction project which included excavation of soil, and Ulrich's resume is rife with proof that he practices in the area of building site excavation and related construction projects. Ulrich's description of plans and specifications he reviewed, coupled with information in his resume, demonstrate that he practices in the same area of construction engineering practiced by Benchmark.

In any event, we cannot conclude the trial court's denial of Benchmark's motion to dismiss was unreasonable, arbitrary, or without reference to any guiding rules or principles. Therefore, the trial court did not abuse its discretion in finding Ulrich to be a qualified affiant under section 150.002(a). *See Walker,* 111 S.W.3d at 62. We overrule Benchmark's second issue.

The trial court's order denying Benchmark's motion to dismiss is affirmed.

---

**6.** We disagree with the Corpus Christi Court of Appeals if it has implicitly concluded that a certificate of merit is defective if the affiant fails to identify and discuss all areas of the *defendant's* engineering practice. *See Landreth,* 285 S.W.3d at 500.