

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00052-CV

_____

NATEX CORPORATION, D/B/A
NATEX CORPORATION ARCHITECTS, Appellant

V.

PARIS INDEPENDENT SCHOOL DISTRICT, Appellee

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 77428

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

O P I N I O N

This is an interlocutory appeal by Natex Corporation, d/b/a Natex Corporation Architects (Natex), a defendant architectural firm, of a denial of a motion to dismiss the suit brought against it by Paris Independent School District (PISD). Natex maintains that dismissal is required because PISD failed to file a certificate of merit pursuant to Section 150.002 of the Texas Civil Practice and Remedies Code when suit was initially filed against it. For the reasons set forth within, we affirm the trial court's judgment.

## I.  FACTUAL AND PROCEDURAL HISTORY

In June 2007, PISD and Natex entered into eight separate American Institute of Architects form contracts for architectural design services related to renovations of certain school buildings in the district and for the construction of a new athletic stadium, there being separate contracts prepared for each of the seven buildings and the new stadium. The contracts specified the financial parameters of the work to be done, clarified the overall budgets in dollar amounts, and set forth the obligations of the parties, but left the time parameters of the contracts to be determined at a later date. Under the contracts, Natex was to provide "Schematic Design Documents based on the mutually agreed-upon program, schedule, and budget for the Cost of the Work."

After the passage of about a year, PISD called Natex to inquire about an "exit strategy" from the relationship because it believed that the architectural work under the contract was not being completed in a timely manner and "time [wa]s of the essence." Natex responded by

2

sending the district invoices for work it alleged that it had completed. A few days later, the PISD Board of Trustees resolved to terminate the agreements for what it deemed as Natex's breach of the contracts. PISD gave written notice to Natex that termination was due to failure to provide "schematic design development documents for approval," failure to "provide a schedule for any of the projects except the high school project," failure to "complete any of its work in accordance with the schedule," and for requests for "payment to which it is not entitled."

PISD filed a suit against Natex, alleging that Natex had breached the contracts, asking the trial court for a declaration of the parties' rights, and seeking recovery of sums already paid. The original petition alleged that Natex failed to timely provide them with necessary documents to allow the district to timely bid the project, causing them to suffer increased costs of labor and material. When Natex "finally did produce some 'construction documents,' they were so out of touch with Plaintiff's budget for the project that the documents that were produced were unusable." PISD claimed Natex "failed to perform any substantial work pursuant to any of these contracts" despite having "been paid in excess of seven hundred thousand dollars for its work on the high school and stadium projects." The petition complained that Natex had "requested additional sums of money in excess of that which it is due under the Agreement[s]." PISD further prayed the trial court to enter a declaration of rights of the parties under the contracts, reasonable attorney's fees, and consequential damages for increased costs of construction due to the breach.

3

Natex answered the suit, claiming that delays were attributable to PISD's failure to acquire lands for the projects in a timely manner and that PISD had also made demands of the designs which, if incorporated, would exceed the budget. Natex also filed a counterclaim for breach of contract for nonpayment of fees "currently due and owing by the District to Natex [in the] amount [of] $1,018,800.48 plus pre-judgment interest."

After the parties had conducted discovery for several months, PISD filed an amended petition adding claims of negligence, negligent misrepresentation, breach of fiduciary duty, and money had and received. In this amended petition, PISD claimed that Natex was negligent because it

> failed to perform its duties with reasonable care, technical skill, ability, and diligence when it failed to timely coordinate a design team and employ professional engineers for the Projects, when it submitted billings to PISD that was not supported by actual work performed on the Projects, and when it failed to communicate with PISD as is required to maintain an adequate progression of the work required on the Projects.

"Natex negligently represented that it could design the drawings and plans and specifications for the Projects with reasonable care, technical skill, ability, and diligence ordinarily required of Architects. It further negligently represented through billing invoices that it performed certain work on the Projects, when in fact, it had not." PISD alleged further that Natex had breached a fiduciary duty and had received money "for work that it did not perform on the Projects and for alleged 'construction documents' that are useless to PISD and interest on those amounts." To its

4

amended petition, PISD attached the affidavit of Bruce Weir, "licensed Architect in the States [sic] of Texas."

Weir's supporting affidavit recited the usual predicatory statements of age and mental competency and then stated, "I am currently a practicing architect in good standing. I have over 28 years of experience in the design/construction industry and have been a licensed practicing architect since 1990." Weir's affidavit opined that after having reviewed several documents itemized in his affidavit, he had concluded that the documents "indicate[d] that Natex failed to timely coordinate a design team and employ engineering professions [sic] for the Projects. Further, Natex failed to perform any of its duties for improvements to Travis Junior High School, Paris High School Renovations, Justiss Elementary School, Givens Elementary School, Crockett Elementary School, and the New Paris Athletic Stadium." His affidavit recited that he had deduced that Natex's failures to timely coordinate a design team and employ engineering professionals "[wa]s a departure from the reasonable care, technical skill, ability, and diligence required of Architects in the same or similar circumstances and constitutes negligence," and that the "billing to PISD that was not supported by the actual work that was performed" and that its failure to communicate with PISD was also a departure from the standard of care.

Natex filed a motion to dismiss the suit based on Section 150.002 of the Texas Civil Practice and Remedies Code because when PISD filed its "Original Petition[,] the District failed to contemporaneously file a Certificate of Merit as required by the statute." Alternatively, Natex

5

argued that although "Plaintiff's First Amended Petition did attach an affidavit," "that affidavit did not purport to serve as a certificate of merit, and it did not meet the specific requirements" of the statute. The trial court denied Natex's motion to dismiss. Natex reasserts these arguments on appeal to support its complaint that the trial court erred in failing to dismiss PISD's suit.[1]

## II. ANALYSIS

### A. Standard of Review

An order granting or denying a motion to dismiss made pursuant to Chapter 150 of the Texas Civil Practice and Remedies Code is immediately appealable as an interlocutory order. TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(e)[2]; *Benchmark Eng'g Corp. v. Sam Houston Race Park*, 316 S.W.3d 41, 44 (Tex. App.—Houston [14th Dist.] 2010, no pet.). This Court reviews the denial of a defendant's motion to dismiss pursuant to Section 150.002 under an abuse of discretion standard. *Benchmark Eng'g*, 316 S.W.3d at 44; *Landreth v. Las Brisas Counsel of Co-Owners, Inc.*, 285 S.W.3d 492, 496 (Tex. App.—Corpus Christi 2009, no pet.); *Criterium-Farrell Eng'rs v. Owens*, 248 S.W.3d 395, 397 (Tex. App.—Beaumont 2008, no pet.); *see also Palladian Bldg. Co. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 433 (Tex.

---

[1]PISD claimed that Natex waived its motion to dismiss. Because of the nature of the disposition of this case, we need not discuss this point of error.

[2]Chapter 150 of the Texas Civil Practice and Remedies Code as modified by the 79th Texas Legislature is the version applicable to this case. *See* Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 12, 2005 Tex. Gen. Laws 348 (amended 2009) (current version at TEX. CIV. PRAC. & REM. CODE ANN. §§ 150.001–.003 (Vernon Supp. 2010)); Act of May 18, 2005, 79th Leg., R.S., ch. 208, §§ 2, 4–5, 2005 Tex. Gen. Laws 369, 369–70 (amended 2009) (current version at TEX. CIV. PRAC. & REM. CODE ANN. §§ 150.001–.003). All reference in this opinion will be to the prior version of 150.002.

App.—Fort Worth 2005, no pet.); *Gomez v. STFG, Inc.*, No. 04-07-00223-CV, 2007 WL 2846419, at *1 (Tex. App.—San Antonio Oct. 3, 2007, no pet.) (mem. op.). An abuse of discretion occurs when the trial court acts in an unreasonable and arbitrary manner or without reference to any guiding rules or principles. *Palladian*, 165 S.W.3d at 433 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court does not demonstrate an abuse of discretion. *Id.* However, a clear failure by the trial court to analyze or apply the law correctly also constitutes an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

Natex made no request for findings of fact or conclusions of law. We presume the trial court's judgment implies all necessary findings of fact to support its ruling, and will sustain it on any reasonable theory that is consistent with the evidence and the applicable law, considering only the evidence favorable to the decision. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Jones v. Smith*, 157 S.W.3d 517, 520 n.3 (Tex. App.—Texarkana 2005, pet. denied).

### B.     The Statute

Section 150.002 of the Texas Civil Practice and Remedies Code provides:

> (a)     In any action . . . for damages arising out of the provision of professional services by a licensed or registered professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party licensed architect . . . competent to testify, holding the same professional license as, and practicing in the same area of practice as the defendant, which affidavit shall set forth specifically at least one negligent act, error, or omission claimed to exist and the

7

factual basis for each such claim.  The third-party . . . licensed architect shall be licensed in this state and actively engaged in the practice of . . . engineering.

TEX. CIV. PRAC. & REM. CODE ANN. § 150.002.  "Chapter 150 may have been enacted to limit actions against architects and engineers by ensuring that there is some basis for the lawsuit." *Landreth*, 285 S.W.3d at 496; *Owens*, 248 S.W.3d at 399.  *But see Benchmark Eng'g*, 316 S.W.3d at 45–46) (disagreeing with *Owens* and holding certificate of merit need not incorporate or refer to a standard of care).

### C.    Section 150.002 Does Not Apply to PISD's Original Petition

Natex contends that Section 150.002 applied to PISD's original petition because the district's claims arose out of the provision of professional services.  It focuses its argument on the claim in PISD's original petition that Natex's designs were "untimely" and "unusable."  Natex urges the Court to look at that underlying basis of the claims alleged in the original petition to determine if PISD's "contract claim could be considered a mis-cast negligence claim."

As noted in *Ashkar Engineering Corp. v. Gulf Chemical & Metallurgical Corp.*:

Section 150.002(a) states that it applies "in any action for damages arising out of the provision of professional services by a design professional." This language suggests that the intent of Section 150.002 is that it apply broadly and that it is not restricted to any specific cause of action. Other language in subsection (a) provides, however, that, in the affidavit, the expert is required to have "set forth specifically at least one negligent act, error, or omission claimed to exist and the factual basis for such claim . . . ."  This language suggests that Section 150.002 is intended only to apply to negligence claims.

8

No. 01-09-00855-CV, 2010 WL 376076, at \*4 (Tex. App.—Houston [1st Dist.] Feb. 4, 2010, no pet.) (mem. op.).

Every word of a statute must be presumed to have been used for a purpose, and every word excluded from a statute must also be presumed to have been excluded for a purpose. *Landreth*, 285 S.W.3d at 497. Keeping this rule in mind, along with other rules of statutory construction,[3] Texas courts have decided that Section 150.002 applies only to negligence or claims based on negligent acts. "When the plaintiff does not claim a negligent act, error or omission exists, and is not required to make such an allegation as an element of its cause of action, a certificate of merit is not required . . . ." *Kniestedt v. Sw. Sound & Elecs., Inc.*, 281 S.W.3d 452, 455 (Tex. App.—San Antonio 2007, no pet.). "To require such an affidavit outside the context of a negligence cause of action would require an affidavit that had no relevance to the suit and would render the statute meaningless." *Parker County Veterinary Clinic, Inc. v. GSBS Batenhorst, Inc.*, No. 2-08-380-CV, 2009 WL 3938051, at \*3 (Tex. App.—Fort Worth Nov. 19, 2009, no pet.) (mem. op.); *Curtis & Windham Architects, Inc. v. Williams*, 315 S.W.3d 102, 108 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Even *Landreth*, Natex's most-cited case, reiterated the rule that "[i]f a plaintiff was not claiming a negligent act, error or omission, a certificate of merit is not required."

---

[3]Statutory construction is a question of law we review de novo. *Benchmark Eng'g*, 316 S.W.3d at 44–45 (citing *Consol. Reinforcement, L.P. v. Carothers Exec. Homes, Ltd.*, 271 S.W.3d 887, 891 (Tex. App.—Austin 2008, no pet.). We construe statutory language to ascertain and effectuate legislative intent, and we consider the plain and common meaning of each word in the statute. *Tex. Mut. Ins. Co. v. Sonic Sys. Int'l, Inc.*, 214 S.W.3d 469, 476 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). We also view statutory terms in context and give them full effect. *Id*. We presume every word of a statute was used for a purpose, and every word excluded from a statute was excluded for a purpose. *Cameron v. Terrell & Garrett, Inc*., 618 S.W.2d 535, 540 (Tex. 1981); *Eastland v. Eastland*, 273 S.W.3d 815, 821 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

9

*Parker County*, 2009 WL 3938051, at *3 (citing *Gomez v. STFG, Inc.*, No. 04-07-00223-CV, 2007 WL 2846419, at *2 (Tex. App.—San Antonio Oct. 3, 2007, no pet.) (mem. op.) (holding Chapter 150 does not apply to breach of contract and breach of fiduciary duty claims); *Consol. Reinforcement*, 271 S.W.3d at 893. We conclude, as did our sister courts, that the applicable version of Section 150.002 applies only to negligence claims and not to claims based on contract.

We now analyze Natex's argument that PISD's original breach of contract and declaratory judgment action was really an artfully pled negligence claim, despite its base in contract. "Because we are not bound by the labels used by the parties, we look to [PISD's] pleadings and determine for ourselves what claim" it asserted. *Ashkar Eng'g*, 2010 WL 376076, at *7. To distinguish between tort and contract claims, we consider the source of the duty owed and the nature of the remedy sought. *Parker County*, 2009 WL 3938051, at *3 (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998)). If PISD's causes of action in the original petition arose only from a violation of a duty imposed by law, the cause of action sounds in tort. *Id.* If the causes of action arose from a duty imposed by a contract, the cause of action is for breach of contract. *Id.* A contractual relationship between the parties may create duties under both contract and tort law, and "[t]he acts of a party may breach duties in tort or contract alone or simultaneously in both." *Id.* The nature of the remedy is instructive on the issue. *Id.* at *4. "When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Id.*

10

Natex relies heavily on *Ashkar Engineering* and *Parker County*. The court in *Ashkar* examined claims in the plaintiff's petition that the engineer failed to adequately plan, progress, or complete engineering services, and concluded that the breach of contract claims in the plaintiff's petition mirrored negligence claims. *Ashkar Eng'g*, 2010 WL 376076, at *10. In so deciding, it relied on a key distinguishing fact. The *Ashkar* court clarified "the parties before us do not have a written contract. GCMC does not direct us to any specific provision of a contract giving rise to any specific duties by Ashkar to adequately design, engineer, test, or oversee the construction of the expansion joint." *Id.* Natex complains that the original petition did not refer "to any specific provision of a contract giving rise to any specific duties"; rather, PISD's petition was based on "untimely" and "unusable" construction documents. PISD complained that the documents were untimely produced and "unusable" because the documents produced "were so out of touch" with the available budget for the construction that they could not be accommodated for use by PISD. Provisions in the contracts clearly required Natex to "provide Schematic Design Documents based on the mutually agreed-upon program, schedule, and budget for the Cost of the Work," identified numerically in each contract. Failure to mention these specific provisions of the contracts in the original petition does not deny their existence since the written contracts were attached to the petition, and it is clear that the source of the duty giving rise to PISD's suit was derived from the responsibilities springing from those contracts. Furthermore, *Ashkar Engineering* looked to the nature of the remedy sought, and further stated, "Further, GCMC generally seeks damages for

11

repairs and remediation, and not economic loss related directly to the subject of the contract . . . . This suggests that GCMC's claims do not sound in contract." *Id.* Here, PISD sought consequential damages and attorney's fees recoverable in a contract dispute in its original petition, not damages in tort.

In its reasoning, *Ashkar Engineering* consistently referred to *Parker County*. In that case, just as in this case, it was the written contract that "gave rise to a duty," and "it is the breach of this duty that Appellants complain[ed] about." *Parker County*, 2009 WL 3938051, at *4. *Parker County* noted that the petition sought consequential damages, concluded the basis for the petition was breach of contract, and concluded that Section 150.002 did not apply. In so doing, it rejected the precise notion Natex advances, i.e., that the statute should apply merely because this is a suit against an architecture professional. *Id.* at *4–5.

PISD and Natex had written contracts, and, as explained above, the source of the duties referenced in the original petition stem from the contracts. The original petition sought a declaration of rights under the contracts and consequential damages for the breach of those contracts. Breach of contract and declaratory judgment actions do not require that they be supported by the certificate of merit affidavit mandated by Section 150.002. *Curtis & Windham Architects*, 315 S.W.3d at 108 (action for declaratory judgment did not require certificate of merit since it did not implicate a negligent act, error, or omission); *Parker County*, 2009 WL 3938051, at *5. Thus, we conclude PISD's claims in the original petition were based in contract. As such,

they were not required to contemporaneously file a certificate of merit. We overrule Natex's first point of error.[4]

### D. Was the Affidavit of Weir on the Amended Petition Sufficient?

Section 150.002 requires four initial criteria to be met with regard to the affiant's qualifications: the affiant (1) must be a registered architect (2) who is licensed to practice in Texas and (3) must actively be practicing (4) "in the same area of practice as the defendant." TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a); *Landreth*, 285 S.W.3d at 498. In this case, Weir stated he was a currently practicing, licensed architect in Texas in good standing, with "over 28 years of experience in the design/construction industry." There is no argument that the affidavit fails to meet requirements one through three. Natex argues that Weir is not practicing in the same area as Natex.

Here, although the affidavit does not specifically state that Weir practices in the same area as Natex, such specific and precise language is not required where the court receives "ample information reflecting the fact that he practices in the same area." *Benchmark Eng'g*, 316 S.W.3d at 49.[5] Weir stated he has a "greater degree of technical and specialized knowledge concerning

---

[4]Natex argues that the trial court erred in implicitly allowing PISD to cure its failure to file a certificate of merit by allowing it to file Weir's affidavit with the amended petition. Because we conclude Section 150.002 did not apply to the original petition, we reject Natex's argument.

[5]The statute says that "the plaintiff shall be required to file with the complaint an affidavit of a third-party licensed architect, . . . holding the same professional license as, and practicing in the same area of practice as the defendant, *which affidavit shall set forth specifically* at least one negligent act, error, or omission claimed to exist and the factual basis for each such claim." TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a) (emphasis added). That does not mean that the affidavit must slavishly track the wording of the statute or that the court hearing a challenge to the qualifications of the affiant must rely solely on the content of the affidavit. In other words, although the statute

13

the architectural discipline than the average person" and claimed his expertise "related to the specific issues in this lawsuit." Yet, Natex takes the position that the fact Weir is an architect who provides design services is not enough since Natex was hired "to provide architecture and design services *in the specific areas of school renovations and new construction*." (Emphasis added.)

To support its proposition, Natex relies on *Landreth*, which is distinguishable from this case. Las Brisas filed suit against Landreth for breach of agency, breach of fiduciary duty, negligence, negligent misrepresentation, and breach of contract. 285 S.W.3d at 494. Las Brisas filed a certificate of merit "[a]fter suit was filed." *Id*. The certificate of merit did not state whether Las Brisas's architect practiced in the same area of practice as Landreth. *Id*. During discovery, the architect testified that while Landreth was engaged in design restoration architecture, he had never worked as a design restoration architect. *Id*. at 495. The court considered the architect's deposition testimony and found that the trial court erred in failing to dismiss only the negligence claims. *Id*. at 500.

In this case, we see no requirement in the law suggesting that Weir would have to practice in the specific field of "architectural design of educational facilities" in order to qualify under the statute. [6] The Texas Occupations Code merely requires that the "architectural plan[s] or specification[s] for . . . a new building having construction costs exceeding $100,000," or

---

requires the affidavit to be made only by certain qualified persons, it is not required that the affidavit set out those qualifications.

[6]Natex argues that Weir must practice in the same area of architecture. The statute merely says Weir must be "practicing in the same area of practice." TEX. CIV. PRAC. & REM. CODE ANN. § 150.002.

14

"alteration[s] or addition[s] [to an existing building] exceeding $50,000," "is or will be used for education" must be made by an architect. TEX. OCC. CODE ANN. § 1051.703 (Vernon 2004). The Occupations Code does not differentiate between the different fields of architecture. TEX. OCC. CODE ANN. § 1051.001(1) (Vernon Supp. 2010). In fact, it defines "practice of architecture" to include

> a service or creative work applying the art and science of developing design concepts, planning for functional relationships and intended uses, and establishing the form, appearance, aesthetics, and construction details for the construction, enlargement, or alteration of a building or environs intended for human use or occupancy, the proper application of which requires education, training, and experience in those matters. The term includes:
>
> (A) establishing and documenting the form, aesthetics, materials, and construction technology for a building, group of buildings, or environs intended to be constructed or altered;
>
> (B) preparing, or supervising and controlling the preparation of, the architectural plans and specifications that include all integrated building systems and construction details, unless otherwise permitted under Section 1051.606(a)(4);
>
> (C) observing the construction, modification, or alteration of work to evaluate conformance with architectural plans and specifications described in Paragraph (B) for any building, group of buildings, or environs requiring an architect;
>
> (D) programming for construction projects, including identification of economic, legal, and natural constraints and determination of the scope and spatial relationship of functional elements;
>
> (E) recommending and overseeing appropriate construction project delivery systems;

> (F) consulting, investigating, and analyzing the design, form, aesthetics, materials, and construction technology used for the construction, enlargement, or alteration of a building or environs and providing expert opinion and testimony as necessary . . . .

TEX. OCC. CODE ANN. § 1051.001(7). This is what Natex was hired to do.

Looking at the affidavit in the light most favorable to the court's ruling, we find statements that Weir was a currently practicing architect, experienced in design and construction, with expertise "related to the specific issues in this lawsuit," were sufficient to impress upon the judge's mind that Weir was practicing in the same area of practice as Natex, who was hired to provide design and construction architectural services. Therefore, we conclude that the trial court was provided with sufficient information to make the factual determination that Weir practiced in the same area of practice as Natex. The trial court did not abuse its discretion in making this factual finding.

## III.    CONCLUSION

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:        October 6, 2010
Date Decided:          November 1, 2010