ACCEPTED
05-14-01507-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
6/15/2015 5:05:12 PM
LISA MATZ
CLERK

**Oral Argument Requested**

No. 05-14-01507-CV

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS

6/15/2015 5:05:12 PM

LISA MATZ
Clerk

## IN THE FIFTH DISTRICT COURT OF APPEALS
## DALLAS, TEXAS

HOLLY HENDERSON,                                                  *Appellant,*

vs.

STEPHEN E. CHRISMAN AND
TRACI L. CHRISMAN,                                               *Appellees.*

Appeal from the 416th Judicial District Court, Collin County, Texas
Trial Court No. 416-01374-2009
Hon. Chris Older presiding

### APPELLEES' BRIEF

Steven J. Pawlowski
State Bar No. 00797226
SHACKELFORD MELTON, MCKINLEY &
NORTON, LLP
3333 Lee Parkway, Tenth Floor
Dallas, Texas  75219
(214) 780-1400
(214) 780-1401 (Fax)

ATTORNEYS FOR PLAINTIFFS-APPELLEES,
STEPHEN E. CHRISMAN AND TRACI L. CHRISMAN

## IDENTITY OF PARTIES AND COUNSEL

**Appellees/Plaintiffs in the trial court:**

Stephen E. Chrisman and Traci L. Chrisman

**Trial Counsel for Appellees:**

Steven J. Pawlowski
State Bar No. 00797226
Shackelford, Melton, & McKinley, LLP
3333 Lee Parkway, Tenth Floor
Dallas, Texas 75219
Telephone: 214-780-1400
Facsimile:  214-780-1401

**Appellant/Defendant in the trial court:**

Holly Henderson

**Trial Counsel for Appellant:**

Byron K. Henry
Cowels & Thompson, P.C.
901 Main Street, Suite 3900
Dallas, Texas 75202
Telephone: 214-672-2000
Facsimile:  214-672-2020

## TABLE OF CONTENTS

Identity of Parties and Counsel....................................................................................i

Table of Contents.................................................................................................. ii-iii

Index of Authorities...............................................................................................iv-vi

Definitions and Citations ......................................................................................... 1

Statement of Facts ................................................................................................... 4

Argument … .......................................................................................................... 11

    Standard of Review … .................................................................................. 11

    **Issue No. 1:**  The trial court did not abuse its discretion in granting turnover and injunctive relief because there was legally sufficient evidence to justify relief in this case. ….......................................................................................................... 12

    A.    Appellees provided the Trial Court competent evidence............................ 12

    B.    Appellees met their burden for turnover relief........................................... 17

        1.    Unsatisfied Judgment. ……………………………………….….... 17

        2.    Appellant owns property. ..…………………………………………. 18

        3.    Property is not readily attached.………………………………….….. 18

        4.    Appellant did not claim or prove property was exempt…………... 21

    C.    Injunctive relief included with turnover order to preserve status quo is proper………………………………………………………………………... 21

    **Issue No. 2:**  A charging order is not the exclusive remedy available in this case. ...................................................................................................................... 25

    **Issue No. 3:**  The attorney fee language in the order is harmless error. …........ 26

Prayer ..................................................................................................................... 26

Certificate of Compliance ...................................................................................... 27

Certificate of Service .............................................................................................. 27

# INDEX OF AUTHORITIES

**CASES**                                                    **PAGE**

*Bay Area Healthcare Grp., Ltd. v. McShane*,
239 S.W.3d 231 (Tex. 2007) ............................................................... 15

*Black v. Shor*,
443 S.W.3d 170 (Tex. App.—Corpus Christi 2013, pet. denied) .............. 10, 12, 13, 15

*Childre v. Great Sw. Life Ins. Co.*,
700 S.W.2d 284 (Tex. App.—Dallas 1985, no writ) .................................. 10, 18, 19, 20

*Cre8 Int'l, LLC v. Rice*,
2015 Tex. App. LEXIS 5613 (Tex. App.—Dallas June 3, 2015) ..................... 10, 21, 25

*Downer v. Aquamarine Operators, Inc.*,
701 S.W.2d 238 (Tex. 1985) ...................................................................... 11

*Europa Int'l, Ltd. v. Direct Access Trader Corp.*,
315 S.W.3d 654 (Tex. App.—Dallas 2010, no pet.) .................................. 17, 19, 20, 21

*Guerinot v. Wetherell*,
2013 Tex. App. LEXIS 6932 (Tex. App.—Houston [1st Dist.] June 6, 2013) ......... 15, 16

*In re Van Waters & Rogers, Inc.*,
145 S.W.3d 203 (Tex. 2004) ...................................................................... 11

*Johnson v. Fourth Court of Appeals*,
700 S.W.2d 916 (Tex. 1985) ...................................................................... 11, 12

*Jones v. Smith,*
157 S.W.3d 517 (Tex. App.–Texarkana 2005, pet. denied) ......................................... 12

*Landscape Design v. Harold Thomas Excavating, Inc.,*
604 S.W.2d 374 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.) ............................... 16

*Main Place Custom Homes, Inc. v. Honaker*,
192 S.W.3d 604 (Tex. App.—Fort Worth 2006, pet. denied) ................................. 10, 16

*McConathy v. McConathy*,
869 S.W.2d 341 (Tex. 1994) ...................................................................... 14

*Michiana Easy Livin' Country, Inc. v. Holten,*
168 S.W.3d 777 (Tex. 2005) ................................................................ 13, 15

*Miga v. Jensen*,
2012 Tex. App. LEXIS 1911 (Tex. App.—Fort Worth Mar. 8, 2012) .................... 22, 24

*Naficy v. Braker,*
642 S.W.2d 282 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) .................. 16

*Natex Corp. v. Paris Independent School District*,
326 S.W.3d 728 (Tex. App.—Texarkana 2010, pet. filed) ............................................ 11, 12

*Pillitteri v. Brown*,
165 S.W.3d 715 (Tex. App.—Dallas 2004, no pet.) ...................................................... 17

*Samlowski v. Wooten,*
332 S.W.3d 404 (Tex. 2011) ................................................................................... 11, 12

*Sanders v. Wood,*
348 S.W.3d 254 (Tex. App.—Texarkana 2011, no pet.)................................................ 11

*Stanley v. Reef Securities*,
314 S.W.3d 659 (Tex. App.—Dallas 2010, no pet.) ............................................... 20, 25

*TPS Freight Distributors, Inc. v. Texas Commerce Bank-Dallas*,
788 S.W.2d 456 (Tex. App.—Dallas 1990, pet denied) ................................................ 16

*Walker v. Gutierrez,*
111 S.W.3d 56 (Tex. 2003) ...................................................................................... 11

*Womack v. Berry,*
291 S.W.2d 677 (1956) ............................................................................................. 11

*Worford v. Stamper*,
801 S.W.2d 108 (Tex. 1990) ................................................................................... 12

**STATUTES**                                                                                          **PAGE**

LA.REV.STAT.ANN. §12:1329 (2014)…..................................................................... 18

LA.REV.STAT.ANN. § 12:1330 (a) …….................................................................... 19, 25

LA.REV.STAT.ANN. § 12:1333 …... ...................................................................... 19, 25

TEX. BUS. ORG. CODE § 21.001 ...................................................................... 19, 25

TEX. BUS. ORG. CODE § 101.106(a) ..................................................................... 18

TEX. BUS. ORG. CODE § 101.109 ................................................................... 19, 25

TEX. BUS. ORG. CODE § 101.1115 ................................................................ 19, 25

TEX. CIV. PRAC. & REM. CODE §31.002(a) ......................................................... 20

TEX. GOVT. CODE § 21.001(a) (2014) ........................................................... 22, 25

TEX. R. EVID. 103…………….. ...................................................................... 15

TEX. R. EVID. 801(e)(2)…………….. ............................................................ 14

**OTHER AUTHORITIES**

TEX. R. APP. P 33.1…………….. ................................................................... 15

## DEFINITIONS AND CITATIONS

"**CR**" as used herein refers to the Clerk's Record (filed October 13, 2010) consisting of 1 volume, and it will be cited as "CR" with the page number following.

"**Appellees**" or **"Chrismans"** as used herein refers to Appellees Stephen E. Chrisman and Traci L. Chrisman, Plaintiffs in the court below.

"**Appellant**" or **"Henderson"** as used herein refers to Appellant Holly Henderson, a Defendant in the court below. Holly Henderson was formerly known as Holly Citelli in the underlying proceeding.

"**AB**" as used herein refers to Appellant's Brief.

# I.

## STATEMENT OF THE CASE

*Nature of the case.* Appeal from post-judgment turnover order. CR 178.

*Course of proceedings.* The underlying proceeding was brought by Appellees on April 9, 2009 against Appellant and others involving, among other things, misapplication of trust funds, fraud in a real estate transaction, and violations of the Deceptive Trade Practices Act in connection with the failed construction of a home for Appellees. CR 16. Allegations included diverting the Appellees monies "for Holly Citelli's [Appellant] use and may have been diverted to a family trust." CR 21. On September 20, 2013, following default of settlement payments, an Agreed Final Judgment was entered against Appellant for $266,866.00. CR 46. Following some discovery, Appellees filed a Motion for Post-Judgment Turnover against Appellant. CR 87.

*Trial court disposition.* On November 6, 2014, the trial court granted the Motion for Post-Judgment Turnover against Appellant. CR 178.

**II.**

## ISSUES PRESENTED

**Issue No. 1:** The trial court did not abuse its discretion in granting turnover and injunctive relief because there was legally sufficient evidence to justify relief in this case.

**Issue No. 2:** A charging order is not the exclusive remedy available in this case.

**Issue No. 3:** The attorney fee language in the order is harmless error.

## III.

## STATEMENT OF FACTS

**The underlying lawsuit.**

The underlying proceeding was brought by Appellees on April 9, 2009 against Appellant and others involving, among other things, misapplication of trust funds, fraud in a real estate transaction, and violations of the Deceptive Trade Practices Act in connection with the failed construction of a home for Appellees. CR 16. Allegations included diverting the Appellees monies "for Holly Citelli's [Appellant] use and may have been diverted to a family trust." CR 21. On September 20, 2013, following default of settlement payments, an Agreed Final Judgment was entered against Appellant for $266,866.00. CR 46.

Appellant's divorce from her husband, Jackie D. Citelli, involved an agreement between them regarding Jackie Citelli making settlement payments and indemnifying Appellant. CR 168 at ¶ 2. Appellees are not a party to this agreement. *Id.*

**No payments have been made toward the Agreed Judgment.**

Appellant has not made any payments toward the Agreed Judgment. CR 138, ln.25 to CR 139, ln. 18.

**Appellant' income and payments to others.**

Appellant's deposition was taken October 15, 2014. RR at Ex. 2. Appellant is a college educated person. RR at Ex. 2, pg. 11, ln 22 to pg. 12, ln. 7. Appellant has worked for a homebuilder for the last two years, and this is her only source of work income. RR

at Ex. 2, pg. 7, ln. 20 to pg. 8, ln. 24. Appellant sells homes for the builder solely for commissions, although she is not a licensed agent or broker. RR at Ex. 2, pg. 10, ln. 19 to pg. 11, ln. 6.

Appellants 2013 tax return shows total income of $126,880. RR at Ex. 2; pg. 63, ln. 17-20; RR at Ex. 2 at Exhibit 15. Appellant did not produce a complete copy of the return at her deposition, but has a copy of it. RR at Ex. 2, pg. 63, ln. 25 to pg. 65, ln. 6.

Appellant has only a Chase checking account. RR at Ex. 2, pg. 60, ln. 21 to pg. 61, ln. 10; and Ex. 2 at Exhibit 13. As of December of 2013, the account had a balance of $5,727.08. RR at Ex. 2 at Exhibit 13. Appellant has in her possession all of her checking account statements for the past 24 months, but failed to produce all of them, and instead provided only four months of statements for 2014. Ex. 2, pg. 98, ln. 16 to pg. 99, ln. 11; Ex. 2 at Exhibit 16. The 2014 bank statements show various payments to her Citi Advantage credit card in amounts up to $10,000. RR at Ex. 2, pg. 100, ln. 7-24; RR at Ex. 2 at Exhibit 16. Appellant does not carry a balance on the credit card and pays the card in advance. *Id.* Appellant pays her aunt monthly payments because Appellant is on her aunt's cell phone plan. RR at Ex. 2, pg. 99, ln. 12-15.

**Appellant's interest in Henderson Properties.**

Appellant inherited her interest in Henderson Properties, LLC ("Henderson Properties") when her father passed away. CR 140, ln. 14-15. It is Appellant's understanding that she is not a member, and that she inherited one-third of the membership

interest her father had. CR 153, ln. 4-18. She has no certificate or document reflecting her interest. CR 136, ln. 20 to CR 137, ln. 1.

Appellant is an assignee of a membership interest of Henderson Properties and has a 16.6666666% interest. CR 87; CR 104 at ¶2; CR 106 (a copy of Holly Henderson's Schedule K-1 from Henderson Properties). Appellant stated in her sworn interrogatory answers that she "owns a 16% interest in Henderson Properties, LLC." CR 118 (Interrogatory No. 21); 122 (Affidavit). Henderson Properties has various income producing properties. CR 107-108.

Appellant also answered that she received monies by referring to a document she produced as bates labeled PJ-DEF HC 076 titled, "Transactions by Account." CR 117 (Interrogatory No. 18); 122 (Affidavit). The Transactions by Account shows that Appellant received distributions from Henderson Properties in 2011, 2012, and 2013 totaling $155,000, and including distributions in October of each year. CR 104 at ¶2; CR 123 (copy of the Transactions by Account for Holly Henderson bates labeled PJ-DEF HC 076).

Appellant does not care if she receives any distributions from Henderson Properties:

> Q. OKAY. AND CAN YOU EXPLAIN TO ME WHY IT IS THAT YOU DON'T CARE WHAT ASSETS HENDERSON PROPERTIES HAS OR HOW THEY'RE MANAGED?
>
> A. IT'S AN INHERITANCE THAT I GOT WHEN MY DAD DIED, AND I JUST -- I'VE NOT HAD ANY ACTIVE PARTICIPATION IN IT.

> AND IF I GET A DISTRIBUTION, I GET ONE; IF I DON'T, I
> DON'T. I DON'T CARE. IT'S NOT MY -- I'M BUSY AT WORK,
> BUSY RAISING KIDS. I DON'T HAVE TIME. I DON'T ...

CR 143, ln. 11-20.

Appellant does not participate in the management of Henderson Properties and does not know what real estate it owns. CR 141, ln. 8-25; CR 142, ln. 8-12. Appellant received the 2012 form K-1 from her aunt; she did not discuss it with her aunt, family or accountant—she just gives it to her accountant. CR 151, ln. 16 to CR 152, ln. 8; CR 117 (which is Depo. Exhibit 17 and Exhibit 2 to the supplement, and is the same as CR 106 which is Ex. B-1 to the motion).

Appellant did not receive distributions in 2014. CR 144, ln. 24-25. Appellant's aunt, Dixie Henderson, provided the spreadsheet (CR 123 which is Ex. B-3 to the motion) showing the distributions Appellant has received. CR 144, ln 11-23. Appellant does not participate in any discussions regarding the timing or amount of distributions, does not talk about it with her aunt or family members, and simply receives distribution checks whenever her aunt gives them to her. CR 145, ln. 1 to CR 147, ln. 22.

**Appellant's loan to her boyfriend:**

Appellant' interrogatory answers merely state that Appellant "loaned her boyfriend, John Eggleton, $9,500 in November 2013." (herein the "Loan"). CR 116 (copy of answer to Interrogatory No. 16); CR 122 (verification).

On October 15, 2014, Appellant testified at her deposition and provided details regarding the loan as follows: 1) she loaned her boyfriend $9,500 from money she had in

her checking account from her income; 2) the loan was so he could pay off a credit card he owed; 3) she does not know his address or phone number; 4) she gave him her account number and some deposit slips and he just deposits the monthly payment into her account; 5) there is no promissory note; 6) she doesn't care if he pays late; and 7) there is an email from him confirming the terms of the loan which includes ten additional monthly payments. CR 148, ln. 11 to CR 150, ln. 16; CR 134, ln. 21 to CR 135, ln. 23; and CR 161 (Depo. Ex. 14 and supplement Exhibit 3).

On October 27, 2015, Appellees filed the motion for turnover order which included a request that "the Court should enter a turnover order ordering that Holly Henderson turn over to a designated sheriff or constable all of Holly Henderson's right, title, and interest in and to the Loan and all rights to receive payments toward the principal and interest owed by John Eggleton on the Loan and all causes of action or other rights to enforce the Loan and collect on the Loan from John Eggleton, together with all documents or records related to the Loan." CR 91 at ¶ 12.

On November 5, 2015, Appellant filed an affidavit stating that at "my deposition, I disclosed that I loaned a small amount of money to my current boyfriend, John Eggleton. Since the date of my deposition such loan has been fully repaid and satisfied…" CR 168 at ¶ 3.

**Motion for Turn-Over hearing:**

Appellees filed a Motion for Post-Judgment Turnover against Appellant. CR 87. Appellees previously filed an Application for Post-Judgment Ex Parte Temporary Restraining Order in Aid of Enforcement of Judgment (the "Application").

The Court granted the Motion and Application. The Court expressly stated that the Court "considered the Motion, the Application, the response, the pleadings and evidence on file, and any evidence from the hearing." CR 178. The evidence from the hearing included Plaintiffs' Exhibit 1, Plaintiffs' Exhibit 2, Plaintiffs' Exhibit 3 (an unsigned affidavit on attorney fees). RR at Exhibits 1, 2, 3. The affidavit was testified to at the hearing by counsel. RR at pg. 34, ln.16 to pg. 35, ln. 17. The evidence on file included affidavits, Appellant's own sworn interrogatory responses, and Appellant's deposition testimony. CR 87 and 96-123; CR 124 and 130-161. In addition, Appellant also filed an affidavit in opposition. CR at 168.

## IV.

## SUMMARY OF THE ARGUMENT

Appellees submitted competent evidence supporting its Motion for Post-Judgment Turnover, including affidavits, Appellant's own sworn interrogatory responses, and Appellant's deposition testimony. Although Appellant made no objections to the evidence submitted with Appellees' Motion and Supplement to the Motion, Appellant argues on appeal that such evidence was not properly before the Court because it was not admitted into evidence at the hearing on the Motion. However, Texas law is clear that the turnover

statute "does not require notice and a hearing," but instead a mere "factual showing" that the debtor has property that cannot readily be attached or levied on by ordinary legal process and is not exempt from attachment, execution or seizure. *Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604, 628 (Tex. App.—Fort Worth 2006, pet. denied). Said factual showing can be made upon evidence submitted to the court with the motion. *See Black v. Shor*, 443 S.W.3d 170, 181 (Tex. App.—Corpus Christi 2013, pet. denied).

Appellant further argues that Section 31.002 provides that a court can only order injunctive relief to make the judgment "turn over property, along with documents or records related to the property." However, Appellant cites no Texas authority for this narrow reading of Section 31.002, and there is none. Moreover, Texas courts of appeals interpret the statute much more broadly. *See Cre8 Int'l, LLC v. Rice*, 2015 Tex. App. LEXIS 5613 at *9 (Tex. App. Dallas June 3, 2015) ("The statute thus expressly gives the trial court powers beyond just mandatory injunctions (or appointing receivers) to achieve the statutory purpose of aiding judgment creditors in reaching hard to get assets to satisfy their judgments.") Moreover, the traditional requirements for granting an injunction do not apply in post-judgment proceedings. *Childre*, 700 S.W.2d at 288 (Tex.App.-Dallas 1985, no writ). For these reasons, Appellees respectfully request that this Court affirm the order of the trial court.

# V.

## ARGUMENT

Pursuant to Rule 38.2(a)(2) of the Texas Rules of Appellate Procedure, Appellees' brief will respond to Appellant's issues in the order presented in Appellant's brief.

## Standard of Review

An abuse of discretion occurs when the trial court acts in an unreasonable and arbitrary manner or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *Sanders v. Wood,* 348 S.W.3d 254, 256 (Tex. App.—Texarkana 2011, no pet.); *Natex Corp. v. Paris Indep. Sch. Dist.*, 326 S.W.3d 728, 732 (Tex. App.—Texarkana 2010, pet. filed). The principles that are to guide a trial court's discretionary decision are determined by the purposes of the rule at issue. *See In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 207 (Tex. 2004) (orig. proceeding); *Downer*, 701 S.W.2d at 242; *Womack v. Berry*, 291 S.W.2d 677, 683 (1956) (orig. proceeding).

But merely because a trial court may decide a matter within its discretion in a manner different than an appellate court would rule does not demonstrate an abuse of discretion. *Natex Corp.*, 326 S.W.3d at 732, citing *Downer*, 701 S.W.2d at 241-42. Stated another way, "[w]hen reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for the trial court's judgment." *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). This means that when factual matters are in dispute, to find an abuse of discretion, "the reviewing court must conclude that the facts

and circumstances of the case extinguish any discretion in the matter." *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011) (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985)).

In the absence of findings of fact or conclusions of law by the trial court, the court of appeals presumes the trial court's judgment implies all necessary findings of fact to support its ruling, and will sustain it on any reasonable theory that is consistent with the evidence and the applicable law, considering only the evidence favorable to the decision. *Natex Corp.*, 326 S.W.3d at 732, citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) and *Jones v. Smith*, 157 S.W.3d 517, 520 n. 3 (Tex. App. − Texarkana 2005, pet. denied).

"A trial court's issuance of a turnover order, even if predicated on an erroneous conclusion of law, will not be reversed for an abuse of discretion if the judgment is sustainable for any reason." *Black*, 443 S.W.3d at 175.

**Issue No. 1:**     **The trial court did not abuse its discretion in granting turnover and injunctive relief because there was legally sufficient evidence to justify relief in this case.**

**A.     Appellees provided the Trial Court competent evidence.**

First, as "an initial matter, the turnover statute itself does not require notice and a hearing prior to issuance of a turnover order." *Black*, 443 S.W.3d at 181. "The trial court must have some evidence before it that establishes that the necessary conditions for the application of 31.002 exist." *Id.* Because the statute contemplates issuance of turnover orders without a hearing, it necessarily means that turnover orders may be issued based

upon evidence submitted to the court in any manner. In *Black*, a trial court abused its discretion in granting turnover relief because there was no evidence of the statutory requirements. The court indicates that this evidence could have come from a verified application or affidavit as follows:

> Appellees did not support their applications for turnover relief by verification or affidavit, and the trial court did not hold evidentiary hearings on turnover relief. Appellants opposed turnover relief by responsive pleadings which included affidavits addressing the application of the statutory requirements for relief.

*Black*, 443 S.W.3d at 181.

The approach of granting turnover relief based upon submission of affidavits, interrogatory answers, and deposition transcripts is consistent with *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005). In *Michiana*, the Supreme Court acknowledged the preference for written submissions:

> For some years now the trend has been away from full evidentiary hearings in open court for most pretrial matters. While we have generally encouraged oral hearings when arguments may be helpful, both the Legislature and this Court have discouraged oral presentation of testimony and evidence when they can be fairly submitted in writing. Counsel can almost always direct the trial court's attention to pertinent deposition excerpts, discovery responses, or affidavits in less time than it takes to recreate them in open court. Presuming that most pretrial proceedings are evidentiary would not only discourage this trend, but would encumber thousands of routine hearings by requiring formal proof that no proof was offered. 168 S.W.3d at 782-83 (citations omitted).

Second, in this case, Appellees submitted competent evidence through affidavits, Appellant's own sworn interrogatory responses, and Appellant's deposition testimony. CR 87 and 96-123; CR 124 and 130-161. In addition, Appellees provided additional exhibits

at the hearing, including additional excerpts of Appellant's deposition testimony with exhibits attached and a copy of Appellant's 2013 K-1. RR at Exhibit 1 and 2. The deposition was recently taken and certified by the court reporter. RR at Exhibit 2, pg. 125; CR 155. Also, Appellant filed an affidavit in response to the motion. CR 162 and 168.

Third, in Appellant's written response, Appellant made no objections to the evidence provided with the Motion and Supplement to the Motion. CR 162. Appellant further offered no evidence to controvert any fact (other than to provide evidence that the loan to her boyfriend was paid off before the hearing and could not be subject to turnover). CR 162 and 168 at ¶ 3. Appellees' evidence is mainly Appellant's own testimony and documents. Appellant could have easily and readily controverted the evidence if it were not true or accurate— but Appellant did not controvert it or attempt to controvert it.

Fourth, at the hearing, when Appellant's counsel was asked by the Court if he had any objection to Exhibit 1 (Appellant's 2013 K-1), Appellant's counsel stated, "No, your honor." RR pg. 6, ln. 18 to pg. 7, ln. 8. Regarding Exhibit 2 (Appellant's deposition testimony), Appellant's counsel objected that it was not certified and it was still within the time for Appellant to make changes. RR at pg. 9, ln 7-23. However, under Texas law, a deposition transcript, whether signed by Appellant or not, is an admission of party-opponent. TEX.R. EVID. 801(e)(2). Further, the submission or use of deposition transcripts requires no further authentication. *See e.g. McConathy v. McConathy*, 869 S.W.2d 341, 342 (Tex. 1994).

The Order states that the Court considered, among other things, the "evidence on file, and any evidence from the hearing." CR 178. Thus, the Court implicitly overruled any objection and considered the evidence. Alternatively, Appellant did not obtain a ruling on the objection and did not preserve any error. Tex. R. App. P. 33.1; Tex. R. Evid. 103; *Bay Area Healthcare Grp., Ltd. v. McShane,* 239 S.W.3d 231, 235 (Tex.2007).

Fifth, the various cases cited by Appellant regarding evidence are all inapplicable to turnover proceedings save and except *Guerinot v. Wetherell.* AB at 19 citing *Guerinot v. Wetherell*, 2013 Tex. App. LEXIS 6932, *12-13 (Tex. App.—Houston [1st Dist.] June 6, 2013). *Guerinot*, however, is either not applicable or distinguishable. In *Guerinot*, the application for turnover order merely attached an unauthenticated printout from the Texas Comptroller's website as the only evidence in support of the application. *Guerinot,* 2013 Tex. App. LEXIS at *12-13. Not surprisingly, the court stated that "[s]imply attaching a document to a pleading neither makes the document admissible as evidence nor dispenses with proper foundational evidentiary requirements." *Id*. at *14.

Obviously, this appeal involves a very different fact scenario. Appellees provided to the trial court affidavits, Appellant's own sworn interrogatory responses, and Appellant's deposition testimony and documents. CR 87 and 96-123; CR 124 and 130-161. Appellees presentation of evidence is consistent with both *Michiana* and *Black*. *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d 777; *Black*, 443 S.W.3d 170. Further, to the extent Appellant argues that *Guerinot* stands for the proposition that the evidence included with an application for turnover order must also be offered into evidence at a

hearing regarding same, the plain language of the statute simply does not support such a holding. Indeed, *Guerinot* recognized that Section 31.002 of the Texas Civil Practice and Remedies Code "does not specify the manner in which evidence may be received in order for a trial court to determine whether the conditions of section subsection (a) exist, or state the form, level of specificity, or quantum of the evidence." *Id*. at * 10.

In fact, as set forth above, Texas law is clear that the turnover statute "does not require notice and a hearing," but instead a mere "factual showing" that the debtor has property that cannot readily be attached or levied on by ordinary legal process and is not exempt from attachment, execution or seizure. *Main Place Custom Homes, Inc.*, 192 S.W.3d at 628. Thus, it is inconceivable that a statute which does not require an evidentiary hearing prior to the issuance of a turnover order could somehow be interpreted to impose a more heightened evidentiary standard than that imposed on a party moving for summary judgment, as Appellant argues in this case. To the extent that the *Guerinot* court supports such a proposition, it has not been, and should not be, followed by this Court.

Finally, any purported error is harmless. A trial court sitting without a jury or during pretrial hearings is presumed to rely only on admissible evidence. *See TPS Freight Distributors, Inc. v. Texas Commerce Bank-Dallas*, 788 S.W.2d 456, 460 (Tex. App.-- Dallas 1990, pet denied); *Naficy v. Braker,* 642 S.W.2d 282, 285 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Landscape Design v. Harold Thomas Excavating, Inc.,* 604 S.W.2d 374, 378 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). Appellant's position on appeal is merely form over substance—with no real purpose served. Appellants do not

assert a single fact established by Appellant's deposition testimony and interrogatory responses is untrue—merely that the trial court was powerless to consider it because it was not re-submitted to the court at the non-required hearing.

## B. Appellees met their burden for turnover relief.

The evidence establishes the requirements for turnover relief have been met. Property is subject to a turnover order if it meets the three elements of Chapter 31.002 of the Texas Civil Practice and Remedies Code. "First, the judgment debtor owns the property. Second, the property must be property a creditor cannot readily attach or levy on by ordinary legal process." *Europa Int'l, Ltd. v. Direct Access Trader Corp.*, 315 S.W.3d 654, 656 (Tex. App.—Dallas 2010, no pet.). Third, that the property not be exempt, and "it is the judgment debtor's burden to prove that the property is exempt from attachment." *Id.* citing *Pillitteri v. Brown*, 165 S.W.3d 715, 722–23 (Tex. App.—Dallas 2004, no pet.).

### 1. Unsatisfied Judgment.

As an initial matter, Appellees have proven that the judgment was unsatisfied. CR 97-102. Appellee Chrisman's affidavit clearly demonstrates the existence of the Judgment, the previous payments credited and the fact that it is unsatisfied. CR 97 at ¶2. The affidavit provides, in pertinent part:

> On September 20, 2013, in the 416th District Court of Collin County, Texas in Cause No. 416-01374-2009, styled Stephen E. Chrisman and Traci L. Chrisman v. Jackie D. Citelli, Holly Citelli, Citelli Custom Homes, L.P., and Citelli Custom Homes GP, LLC, Chrisman obtained an Agreed Judgment against Defendants Jackie D. Citelli, Holly Citelli, Citelli Custom Homes, L.P., Citelli Custom Homes GP, LLC, jointly and severally, for the original sum of $266,866.00 in actual damages, together with interest from the date

of judgment at the rate of 5.0% per annum compounded annually. Payments totaling not more than $21,180.00 have been paid and are credited against the Agreed Judgment which makes the amount of actual damages $245,686. The Agreed Judgment is in all things final, valid, subsisting, unpaid, and is unsatisfied.

A true and correct copy of the Judgment is attached. CR 97 at ¶ 4, and CR 101-102.

Appellant also testified in deposition that she had made no payments toward the amounts owed under the judgment. CR 138, ln. 25 to CR 139, ln. 18.

### 2. Appellant owns property.

Regarding element number 1, Appellant owns property—an interest in Henderson Properties. The facts demonstrate: Appellant inherited her interest in Henderson Properties when her father passed away. CR 140, ln. 14-15. It is her understanding that she is not a member, and she just inherited one-third of the membership interest her father had. CR 153, ln. 4-18. Appellant is an assignee of membership interest of Henderson Properties, and has a 16.6666666% interest. CR 87; CR 104 at ¶2; CR 106 (a copy of Holly Henderson's Schedule K-1 from Henderson Properties); CR 118 (Interrogatory No. 21); 122 (Affidavit). An interest in a limited liability company is property. *See e.g.* Tex. Bus. Org. Code § 101.106(a); La. R.S. 12:1329 (2013).

### 3. Property is not readily attached.

Regarding element number 2, the interest in Henderson Properties cannot be readily attached by ordinary legal process.

In *Childre*, a turnover order was proper where stock was held by a third party and held out of state. *Childre*, 700 S.W.2d at 288. The Court rejected the position that only

after a writ of execution was returned *nulla bona* was property considered not readily attached. *Id.* Similarly, in *Europa*, turnover of stock was proper where a debtor's stock was held by a lienholder and the debtor admitted he made no effort to turn it over or to pay on the judgment. *Europa Int'l, Ltd.*, 315 S.W.3d 657.

Appellant is not a member of the limited liability company Henderson Properties. Upon the death of Appellant's father, who was a member, Appellant does not become a member but becomes an assignee of the interest. Tex. Bus. Org. Code § 101.1115 (Upon death of a member, the successor becomes an assignee of the membership interest); La. Rev. Stat. Ann. § 12:1333 ("If a member who is an individual dies… the member's membership ceases and the member's executor, administrator, guardian, conservator, or other legal representative shall be treated as an assignee of such member's interest in the limited liability company"). The assignee has the right to receive distributions or allocations. Tex. Bus. Org. Code § 101.109; La. Rev. Stat. Ann. § 12:1330(A).

Regarding Appellant's interest in Henderson Properties, Appellant has no certificate or document reflecting her interest. CR 136, ln. 20 to CR 137, ln. 1. Appellant does not participate in the management of Henderson Properties and does not know what real estate it owns. CR 141, ln. 8-25; CR 142, ln. 8-12. Appellant does not participate in any discussions regarding the timing or amount of distributions, does not talk about it with her aunt or family members, and simply receives distribution checks whenever her aunt gives them to her. CR 145, ln. 1 to CR 147, ln. 22.

Appellant's interest is not readily attached by ordinary legal process. It is an assignee's interest that arises by operation of law upon death of the member. Appellant has no certificate or other document—like a stock certificate. Actual stock certificates in *Childre* and *Europa* where not readily attached by ordinary legal process. How much more are Appellant's legal rights as an assignee to distributions from the LLC not readily attached by ordinary legal process. The turnover order requires Appellant to turn over payments or distributions from Henderson Properties. The turnover statute specifically applies to "present or future rights" to property. Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a).

The relief granted in the turnover order is supported by the evidence, is consistent with the statute, and consistent with *Stanley v. Reef Securities*, 314 S.W.3d 659 (Tex. App.—Dallas 2010, no pet.). Despite Appellant's high income and distributions from Henderson Properties, Appellant has paid Appellees nothing on the Judgment. CR 138, ln.25 to CR 139, ln. 18. Appellant does, however, pay her Citi Advantage credit card advances and amounts up to $10,000, and pays it in full each month. RR at Ex. 2, pg. 100, ln. 7-24; RR at Ex. 2 at Exhibit 16. Appellant also pays her aunt monthly payments for her cell phone. RR at Ex. 2, pg. 99, ln. 12-15. Finally, Appellant does not care if she receives any distributions from Henderson Properties. CR 143, ln. 11-20.[1]

---

1 Appellant strains credibility and reason in arguing that relief was somehow improper because Appellant did not specifically testify that she is refusing to pay the judgment (rather she testified that she never paid anything on the judgment despite her high income and payments to others) and she secured her co-debtors meaningless agreement that he would pay the judgment (which he is already obligated to do under the judgment).

APPELLEES' BRIEF - Page 20

### 4. Appellant did not claim or prove property was exempt.

Regarding element number 3, property must not be exempt from attachment, execution, or seizure for the satisfaction of the liabilities. As stated above, however, "it is the judgment debtor's burden to prove that the property is exempt from attachment." *Europa Int'l, Ltd.* 315 S.W.3d at 656. Appellant made no claim of exemption nor offered any evidence that the property was exempt. CR 162. Regardless, there is no law providing that payments received as assignee are not exempt from creditors.

### C. Injunctive relief included with turnover order to preserve status quo is proper.

Appellant argues for a narrow and limited reading of Section 31.002 to mean that a court can only order injunctive relief to "order the judgment debtor to turn over property, along with documents or records related to the property." AB at 31. Appellant cites no authority for this proposition and there is none. For this reason alone, the point should be overruled.

Indeed, contrary to Appellant's assertion, courts of appeals interpret the statute much more broadly. *See Cre8 Int'l, LLC*, 2015 Tex. App. LEXIS 5613 at *9 ("The statute thus expressly gives the trial court powers beyond just mandatory injunctions (or appointing receivers) to achieve the statutory purpose of aiding judgment creditors in reaching hard to get assets to satisfy their judgments.") Also, the traditional requirements

for granting an injunction do not apply in post-judgment proceedings. *Childre,* 700 S.W.2d at 288.

In *Miga* the court stated:

> To justify a postjudgment injunction, an applicant must prove only that "the judgment debtor is likely to dissipate or transfer its assets to avoid satisfaction of the judgment." Evidence of the actual dissipation or transfer of assets is not necessary to meet this standard. "The trial court abuses its discretion in ordering a post-judgment injunction if the only reasonable decision that could be drawn from the evidence is that the judgment debtor would not dissipate or transfer its assets."

*Miga v. Jensen*, 2012 Tex. App. LEXIS 1911 at *30-31 (Tex. App.—Fort Worth, Mar. 8, 2012) (*citations omitted*).

In this case, the prohibition against assigning away Appellant's interest in Henderson Properties is also consistent with Rule 308 of the Texas Rules of Civil Procedure and Tex. Gov't Code § 21.001(a) (2014) ("A court has all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue the writs and orders necessary or proper in aid of its jurisdiction.")

Further, to the extent such a showing is necessary, the evidence shows that Appellant is likely to spend or dissipate any money she receives or asset she has. First, Appellant has not made any payments toward the Agreed Judgment. CR 138, ln.25 to CR 139, ln. 18. Second, Appellant spends or dissipates any monies she receives. Appellant is college educated and receives commissions from home sales. RR at Ex. 2, pg. 11, ln 22 to pg. 12, ln. 7; pg. 7, ln. 20 to pg. 8, ln. 24; pg. 10, ln. 19 to pg. 11, ln. 6.

In 2013, Appellants 2013 tax return shows total income of $126,880. RR at Ex. 2; pg. 63, ln. 17-20; RR at Ex. 2 at Exhibit 15. Appellant received distributions from Henderson Properties in 2011, 2012, and 2013 totaling $155,000, and including distributions in October of each year. CR 104 at ¶2; CR 123. However, as of December of 2013, Appellant's only bank account had a balance of only $5,727.08. RR at Ex. 2 at Exhibit 13; RR at Ex. 2, pg. 60, ln. 21 to pg. 61, ln. 10.

Further, Appellant dissipated an asset—the loan to her boyfriend—to avoid turnover. Appellant loaned her boyfriend $9,500 in November of 2013 (rather than paying on the Judgment) from money she had in her checking account from her income; the loan's purpose was so Appellant's boyfriend could pay off a credit card he owed; Appellant does not know his address or phone number; she gave him her account number and some deposit slips and he just deposits the monthly payment into her account; there is no promissory note; she doesn't care if he pays late; and there is an email from him confirming the terms of the loan which includes ten additional monthly payments. CR 148, ln. 11 to CR 150, ln. 16; CR 134, ln. 21 to CR 135, ln. 23; and CR 161 (Depo. Ex. 14 and supplement Exhibit 3).

On October 27, 2015, Appellees filed the motion for turnover order which included a request that "the Court should enter a turnover order ordering that Holly Henderson turn over to a designated sheriff or constable all of Holly Henderson's right, title, and interest in and to the Loan and all rights to receive payments toward the principal and interest owed by John Eggleton on the Loan and all causes of action or other rights to enforce the Loan

and collect on the Loan from John Eggleton, together with all documents or records related to the Loan." CR 91 at ¶ 12.

On November 5, 2015, Appellant filed an affidavit stating that at "my deposition, I disclosed that I loaned a small amount of money to my current boyfriend, John Eggleton. Since the date of my deposition such loan has been fully repaid and satisfied…" CR 168 at ¶ 3. In other words, there were ten monthly payments remaining on a loan Appellant does not care if he pays late on, but within days of filing the motion for turnover order the loan is paid in full. It is obvious that this was done to avoid the turnover order which would have given Appellees the "rights to enforce the Loan and collect on the Loan" which would be applied to the judgment balance.

Finally, the evidence shows that Appellant did not comply with discovery regarding her assets. Appellant has, but did not provide, all her bank statements or complete tax returns. RR at Ex. 2, pg. 98, ln. 16 to pg. 99, ln. 11; pg. 63, ln. 25 to pg. 65, ln. 6; RR at Ex. 2 at Exhibit 16.

Based upon the evidence before the trial court, it cannot be said that "the only reasonable decision that could be drawn from the evidence is that the judgment debtor would not dissipate or transfer its assets." *Miga,* 2012 Tex. App. LEXIS 1911 at *30-31. As such, the trial court did not abuse its discretion and the order should be affirmed.

**Issue No. 2:**       **A charging order is not the exclusive remedy available in this case.**

The Court should decline the Appellant's invitation to overrule *Stanley v. Reef Securities*, 314 S.W.3d 659 (Tex. App.—Dallas 2010, no pet.).

First, a judgment creditor of a member may obtain a charging order. Appellant is not a member of Henderson Properties. Appellant inherited her interest in Henderson Properties after her father passed away. CR 140, ln. 14-15. It is Appellant's understanding that she is not a member, and that she just inherited one-third of the membership interest her father had. CR 153, ln. 4-18. Appellant is an assignee of a membership interest of Henderson Properties, and has a 16.6666666% interest. CR 87; CR 104 at ¶2; CR 106 (a copy of Holly Henderson's Schedule K-1 from Henderson Properties); CR 118 (Interrogatory No. 21); 122 (Affidavit). Upon the death of Appellant's father, who was a member, Appellant did not become a member but became an assignee of his interest with the right to receive distributions or allocations. Tex. Bus. Org. Code § 101.1115 and § 101.109; La. Rev. Stat. Ann. § 12:1333 and § 12:1330(A).

Second, *Stanley* is consistent with *Cre8 Int'l, LLC v. Rice*, 2015 Tex. App. LEXIS 5613 at *9 (Tex. App. Dallas June 3, 2015) ("The statute thus expressly gives the trial court powers beyond just mandatory injunctions (or appointing receivers) to achieve the statutory purpose of aiding judgment creditors in reaching hard to get assets to satisfy their judgments."). *Stanley* is also consistent with Rule 308 of the Texas Rules of Civil Procedure and Tex. Gov't Code § 21.001(a) (2014) ("A court has all powers necessary for

the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue the writs and orders necessary or proper in aid of its jurisdiction.")

**Issue No. 3:**      **The attorney fee language in the order is harmless error.**

For purposes of this appeal, Appellees concede that attorney fees for appeal should be conditioned upon Appellees being successful on appeal. Appellees have demonstrated in Issue No. 1 and 2 that the order should be affirmed because the trial court did not abuse its discretion in granting the order. As such, any error in not conditioning attorney fees in the order is harmless error.

## VI.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Appellees respectfully request that this Court affirm the order of the trial court (CR 178).

Respectfully submitted,

Shackelford, Melton, McKinley & Norton, LLP

/s/ *Steven J. Pawlowski*
Steven J. Pawlowski
State Bar No. 00797226
3333 Lee Parkway
Tenth Floor
Dallas, Texas 75219
Telephone: (214) 780-1400
Facsimile: (214) 780-1401
Email: Spawlowski@shackelfordlaw.net

**ATTORNEYS FOR APPELLEES**

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word and contains 5,976 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

/s/ *Steven J. Pawlowski*
Steven J. Pawlowski

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been sent to the below-listed counsel and parties of record via facsimile or certified mail return receipt requested on this the 15th day of June, 2015.

| | |
|---|---|
| Israel Suster<br>The Suster Law Group, PLLC<br>1316 Village Creek Drive, Suite 500<br>Plano, Texas 75093 | Byron K. Henry<br>R. Michael Northrup<br>Cowles & Thompson, P.C.<br>901 Main Street, Suite 3900<br>Dallas, Texas 75202 |

/s/ *Steven J. Pawlowski*
Steven J. Pawlowski