Bob Pemberton, Justice *185 This appeal challenges a district court order denying a motion to dismiss under Chapter 150 of the Civil Practice and Remedies Code, the statute requiring that a sworn "certificate of merit" accompany a lawsuit "arising out of the provision of professional services" by engineers and certain other "licensed or registered professional[s]."[1] Through intervening Texas Supreme Court guidance, what was originally a broader range of issues on appeal has distilled principally to whether the district court abused its discretion in determining that the certificate in question stated a sufficient "factual basis" for the affiant's opinion that the appellant committed negligence or other professional error.[2] Concluding that the district court did not abuse its discretion, we will affirm its order.
BACKGROUND
The underlying litigation arose during the construction of the Consolidated Rent-A-Car Facility at the Austin-Bergstrom International Airport. The claimant and appellee, Jordan Prouty, was employed by a steel-erection subcontractor on the project. Prouty seeks recovery of personal-injury damages allegedly caused when a steel overhead canopy collapsed upon him while he was welding components of it from a scissor lift. From the inception of his suit, Prouty has sought recovery from appellant Jaster-Quintanilla & Associates, Inc. (Jaster), a professional engineering firm, predicated on Jaster's alleged negligence or other breach of professional duties in designing and engineering the structural components of the overhead canopy. These claims principally concern Jaster's specifications that the steel canopy and others like it on the project would each be supported by a 12-foot-tall concrete pier to which it was fastened by means of a baseplate and embedded steel anchors. Prouty pleads that Jaster's design of this "critical anchorage system ... to support the canopy structure on the top of the concrete piers was deficient, and failed to achieve the necessary design strength needed to safely support the critical connection of the canopy structure to the concrete pier."
There is no dispute that Prouty's claims against Jaster implicated the certificate-of-merit requirement of Chapter 150.[3] In an attempt to comply, Prouty filed with his *186 original petition an affidavit from a licensed professional engineer, Wesley J. Oliphant. Oliphant averred that he was competent to testify, described his professional background and qualifications (including current Texas licensure as a professional engineer and a practice specialty "in design and fabrication of steel and concrete pole (mast) structures"), and attested to the following in support of Prouty's liability theory:
I have carefully reviewed a number of documents, photographs, drawings etc. provided to me, including construction drawings prepared and sealed by [Jaster] related to the October 22, 2014 failure of a Canopy under construction at the Austin Bergstrom International Airport. Based on that review, and on my knowledge, skill, experience, education, training, and practice as a licensed professional engineer in the state of Texas actively engaged in the practice of engineering, I am of the opinion[ ] that the critical anchorage system that was specified and detailed in the construction drawings sealed by [Jaster] to support the Canopy structure on the top of the concrete piers was a deficient design detail, and fails to achieve the necessary design strength needed to safely support the critical connection of the canopy structure to the concrete pier. I conclude that the [Jaster] design and detail used in this construction was deficient, not in accordance with good engineering practice, and it[s] use on this construction was negligent and below the applicable standard of care one would expect for such a structure in a very public space.
Contending that Oliphant's affidavit did not comply with Chapter 150, Jaster filed a motion to dismiss Prouty's claims against it.[4] Although not disputing compliance with other provisions of the chapter,[5] Jaster urged that the affidavit fell short of the requirements, found in Section 150.002, Subsection (b), that the affidavit "shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service ... and the factual basis for each such claim."[6] Jaster did not dispute that Oliphant had set forth an opinion that it had breached negligence or other professional duties, corresponding to Prouty's theory of recovery-"the [Jaster] design and detail used in this construction was deficient, not in accordance with good engineering practice, and it[s] use on this construction was negligent and below the applicable standard of care one would expect for such a structure in a very public space." However, Jaster urged that Oliphant had failed to set forth an adequate "factual basis" for his opinion. Further, Jaster insisted that Oliphant's affidavit was also insufficient because he had not set forth either opinions or supporting facts to establish the causation element of *187 Prouty's negligence claim, nor described "how the alleged breaches of duty by [Jaster] relate to the incident that allegedly resulted in harm to [Prouty] ... such that it can be determined that the event being described is the one that gave rise to [Prouty's] claims."
Prouty filed a response in which he maintained that Oliphant's affidavit satisfied Chapter 150, properly construed. In the alternative, Prouty asserted that Jaster had waived reliance on Chapter 150 in two ways. First, Prouty emphasized that Jaster had not filed its dismissal motion until after first filing an answer and general denial, moving for and obtaining leave to designate responsible third parties,[7] serving discovery requests on Prouty, and presenting for oral deposition two engineers who, as Jaster employees, had been involved in the design of the structural connection that secured the steel canopy structures to the concrete piers. Only after this "substantial invocation of the litigation process"-and one day after limitations had run-did Jaster file its motion to dismiss, Prouty urged. The second asserted "waiver" occurred during the depositions themselves-both witnesses admitted to miscalculations that caused the anchors to be "420 percent underdesigned" in their capacity to bear force, and one of the witnesses (by then no longer a Jaster employee) accepted responsibility for the error. By admitting to the same professional error made the basis for his claims against Jaster, Prouty reasoned, this testimony established that those claims were not frivolous-what is said to be the purpose of Chapter 150's certificate-of-merit requirement-"waiving" Jaster's right to obtain dismissal thereafter based on supposed inadequacies in Oliphant's affidavit.
Jaster objected to the deposition transcripts as evidence in opposition to its dismissal motion, arguing that the district court could not consider this "extrinsic evidence" in deciding its dismissal motion. The district court sustained Jaster's objection and excluded the deposition transcripts from evidence. On the remaining record, the court denied Jaster's motion without elaborating on its reasoning. Jaster then perfected this appeal of the district court's order.
ANALYSIS
In a single issue, Jaster urges that the district court abused its discretion in failing to grant the dismissal motion because, Jaster insists, Oliphant's affidavit did not comply with Chapter 150. Nor, Jaster adds, did it waive reliance on Chapter 150 through its participation in the litigation process prior to filing its motion. Prouty joins issue with Jaster's contentions and also brings a conditional cross-point urging that the district court abused its discretion in excluding the deposition transcripts from evidence in support of his second "waiver" theory.
Standard of review
We review an order granting or denying a motion to dismiss under chapter 150 for an abuse of discretion.[8] The general test for an abuse of discretion is whether the trial court acted without regard to *188 any guiding rules or principles.[9] An abuse of discretion occurs when either (1) the trial court fails to analyze or apply the law correctly, or (2) with regard to factual issues or matters committed to its discretion, the trial court could reasonably have reached only one decision and failed to do so.[10]
To the extent this analysis entails construction of Chapter 150, our review is de novo.[11] Our primary objective when construing a statute is to give effect to the "Legislature's intent."[12] We seek that intent "first and foremost" in the objective meaning of the text chosen.[13] We read statutes contextually and endeavor to give effect to every word, clause, and sentence.[14] When the meaning of text is unambiguous, that meaning is determinative.[15]
Applicable law
As the Texas Supreme Court has emphasized recently, the purpose behind the Chapter 150 certificate-of-merit requirement is "merely that the plaintiff[ ] make a threshold showing that [his] claim[ ] ha[s] merit" before proceeding further.[16] Likewise, because the certificate is required to be " 'filed early in the litigation, before discovery and before other dispositive motions may be available,' " the court added, "the plaintiff is not required to marshal its evidence or establish every element of its claims."[17]
In this appeal, our specific textual focus is the following portion of Subsection (b) of Section 150.002:
The affidavit shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim.[18]
In its opening and reply briefs on appeal, Jaster brought forward its arguments from below that Oliphant's affidavit failed to comply with these requirements by failing to set forth either opinions or supporting facts to establish the causation element of Prouty's negligence claim, nor by describing "how the alleged breaches of duty by [Jaster] relate to the incident that allegedly *189 resulted in harm." Thereafter, the Texas Supreme Court decided Melden & Hunt, Inc. v. East Rio Hondo Water Supply Corporation[19] and put to rest any questions that could have remained following our own M-E Engineers decision[20] as to whether Chapter 150 imposes either set of requirements. Quoting M-E Engineers , the supreme court explained:
Read as a whole, section 150.002, subsection (b), reveals a core focus on ascertaining and verifying the existence of errors or omissions in the professional services provided by a "licensed or registered professional." In particular, the Legislature has required that the certificate of merit "set forth specifically ... the negligence , if any, or other action, error, or omission of the licensed or registered professional in providing the professional service. " Tex. Civ. Prac. & Rem. Code Ann. § 150.002(b) (emphases added). And this statement of the defendant's acts or omissions "in providing the professional service" must "includ[e] any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim. " Id. § 150.002(b) (emphases added). While appellants ascribe broader implications to the concluding phrase "factual basis for each such claim," in context "each such claim " plainly refers to the immediately preceding "any error or omission in providing advice, judgment, opinion or a similar professional skill claimed to exist " (emphases added), which is simply the information that a certificate must provide regarding errors or omissions in the professional services at issue. See id.
This core focus on errors and omissions in professional services is not altered by the first portion of subsection (b), which requires a certificate to provide these facts "for each theory of recovery for which damages are sought." See id. The effect of this phrase, which was amended to its current form in 2009, is to emphasize that the certificate must identify and verify the existence of any professional errors or omissions that are elements or operative facts under any legal theory on which the plaintiff intends to rely to recover damages. It thus served to eliminate any continuing debate or uncertainty as to whether prior versions of the certificate-of-merit requirement were triggered by damage claims predicated on professional errors or omissions other than negligence.[21]
In short, Chapter 150 does not "require the expert's affidavit to address the elements of the plaintiff's various theories or causes of action"[22] or "operative facts other than the professional errors or omissions that are the focus of the statute."[23] Chapter 150 instead merely "obligates the plaintiff to get an affidavit from a third-party expert attesting to the defendant's professional errors or omissions and their factual basis," which upon motion is examined by the trial court to "determine whether the expert's affidavit sufficiently demonstrates that the plaintiff's complaint is not frivolous."[24] In this respect, among others, the Chapter 150 certificate-of-merit requirement is less exacting than the Medical Liability Act's expert-report requirement, *190 to which it has sometimes been analogized.[25]
"Factual basis"
Through a supplemental brief, Jaster acknowledges that the Texas Supreme Court in Melden & Hunt "rejected the notion that a certificate [of merit] must 'address the elements of the plaintiff's various theories or causes of action.' "[26] Accordingly, Jaster now couches its remaining arguments in terms of a challenge to whether Oliphant set forth a sufficient "factual basis" for his opinion that "the [Jaster] design and detail used in this construction was deficient, not in accordance with good engineering practice, and it[s] use on this construction was negligent and below the applicable standard of care."
The factual basis cited by Oliphant in support of this opinion consisted of the following:
Based on that review [of the previously-referenced documents and materials that included "construction drawings prepared and sealed by [Jaster] related to the October 22, 2014 failure of a Canopy sentence under construction at the Austin Bergstrom International Airport"] and on my knowledge, skill, experience, education, training and practice as a licensed professional engineer, I am of the opinion[ ] that the critical anchorage system that was specified and detailed in the construction drawings sealed by [Jaster] to support the Canopy structure on the top of the concrete piers was a deficient design detail, and fails to achieve the necessary design strength needed to safely support the critical connection of the canopy structure to the concrete pier.
In its pre- Melden & Hunt briefing, Jaster had argued that Oliphant's explanation failed to suffice as the "factual basis" required by Subsection (b) because "the opinion expressed is not a fact, but an interpretation of facts." Analogizing Subsection (b)'s requirements to "an opinion about the solution to a math equation," Jaster posited that "[t]he supporting facts necessary to render an opinion about the validity of a solution to such an equation would be a description of the equation, the value of the variables, and the ultimate solution based on application of the equation to the variables." Oliphant, in Jaster's view, "chose not to provide the equation, the variable values or the solution; instead choosing to opine only that the solution was not accurate." "Hence," Jaster concludes, "no supporting facts were provided." In its supplemental briefing, Jaster suggests that Melden & Hunt provided further validation of its view of Subsection (b).
Jaster points out that the Melden & Hunt court, in the absence of a statutory definition of "factual basis," appeared to approve an "ordinary meaning" of the term as denoting "the events or circumstances giving rise to the professional errors or omissions identified by the third-party expert as distinguished from their legal effect."[27] Jaster further emphasizes *191 the Melden & Hunt court's recognition that the certificate of merit is ultimately a means of determining whether the plaintiff's claims have merit. This purpose can be served, Jaster insists, only if the affidavit "connect[s] the conclusions to the events giving rise to the claims, ... [and] state[s] how the alleged errors caused [Prouty] damages," in addition to "provid[ing] the factual basis in support of the claimed errors and omissions." Jaster similarly suggests that the affidavit "approved" by the Melden & Hunt court had these characteristics, urging that "the contrast" with Oliphant's affidavit "is remarkable." Finally, Jaster points to the concurrence in a second recent Texas Supreme Court decision, Levinson Alcoser Associates , L.P. v. El Pistolon II , Limited .[28] The Levinson Alcoser court unanimously agreed that a Chapter 150 motion to dismiss should have been granted but disagreed on the reasoning. Eight justices held that the plaintiff had not established that the expert possessed the necessary qualifications and so did not reach the challenge to the adequacy of the certificate's factual basis.[29] Justice Brown did not join the Court's opinion but concurred in the judgment because he concluded that the certificate:
is deficient because it is conclusory. A certificate of merit must set forth "the factual basis" for each claim of professional liability. Tex. Civ. Prac. & Rem. Code § 150.002(b). But [the expert's] affidavit is devoid of substance. Its text could be copied and pasted into any certificate of merit without regard to the particular facts of the case.[30]
Jaster urges us to adopt the concurrence's reasoning that "conclusory" affidavits fail to satisfy Chapter 150 and that Oliphant's affidavit falls within the "conclusory" category.
We agree with Jaster to the extent that Subsection (b) requires a "factual basis" to support-and that is necessarily distinct from-the affiant's ultimate opinion that the defendant committed a professional error or omission. But neither Subsection (b) nor Melden & Hunt present as high a hurdle as Jaster assumes. While purporting to acknowledge post- Melden & Hunt that the affiant need not address each element of the plaintiff's causes of action, Jaster would effectively require proof of causation and damages in the guise of a "factual basis" that "connect[s] the conclusions to the events giving rise to the claims, ... [and] state[s] how the alleged errors caused Plaintiff damages." On the contrary, Melden & Hunt confirms that the "factual basis" required is merely that which underlies the asserted professional error or omission to which the affiant attests; the affiant need not "address the elements of the plaintiff's various theories or causes of action"[31] or "operative facts other than the professional errors or omissions that are the focus of the statute."[32]
And Oliphant did provide facts to support his ultimate opinion that Jaster had committed professional errors or omissions-he explained that, based on his review of the relevant materials, "the Canopy structure on the top of the concrete *192 piers was a deficient design detail, and fails to achieve the necessary design strength needed to safely support the critical connection of the canopy structure to the concrete pier." These are not mere conclusions, let alone those that could merely be "copied and pasted into any certificate of merit without regard to the particular facts of the case."[33] Rather, they are assertions of fact, capable of being controverted with contrary evidence, regarding the presence of weaknesses in the particular canopy structure design at issue in this case.[34]
In insisting that Subsection (b) required more, Jaster would effectively import into the factual-basis requirement the higher standards that would govern the competence or admissibility of Oliphant's expert testimony at later junctures in the case. This Court rejected a similar attempt in M-E Engineers to import these evidentiary limitations into the requirements of Section 150.002, Subsection (a), in the absence of any textual indication of such intent by the Legislature.[35] The same reasoning guides us to reject Jaster's proposed extra-textual augmentation of Subsection (b).[36] And while Jaster is correct that the affidavit in Melden & Hunt was somewhat more detailed than Oliphant's, it overreaches in suggesting that the supreme court validated this example as representing the statutory minimum. Instead, the court simply summarized the affidavit, quoted a portion of it, and concluded that there was no abuse of discretion in denying the motion to dismiss.[37] Beyond this, the court did not address the extent of factual showing required by Subsection (b), let alone alter the text the Legislature had prescribed.[38]
In sum, the text of Section 150.002, Subsection (b) requires that the expert certify that the defendant committed the *193 professional errors or omissions being alleged and provide the "factual basis" for that opinion.[39] The "factual basis" need not be in the form of admissible or competent evidence; such requirements operate at later junctures in the proceedings, not in regard to the threshold showing of merit required under Chapter 150. Neither Melden & Hunt nor the Levinson Alcoser concurrence would impose that standard or imply that it is required. We reject Jaster's arguments to the contrary.
And construing Subsection (b)'s factual-basis requirement as written, the district court did not abuse its discretion in denying Jaster's motion to dismiss challenging the sufficiency of Oliphant's affidavit.[40] Accordingly, we overrule Jaster's sole issue without need to reach the alternative ground of waiver.[41] Nor, similarly, do we need to reach Prouty's conditional cross-point, though we must observe that the deposition testimony in question would tend to further confirm that his claims are not merely frivolous-the ultimate goal of the certificate-of-merit requirement.
CONCLUSION
We affirm the district court's order.

See Tex. Civ. Prac. & Rem. Code §§ 150.001 -.002. We have jurisdiction to review the interlocutory order by virtue of Section 150.002, Subsection (f). See id. § 150.002(f) ("An order granting or denying a motion for dismissal [under Chapter 150] is immediately appealable as an interlocutory order.").

See id. § 150.002(b).

See id. § 150.002(a) (certificate required "[i]n any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional"); see also id. § 150.001(1-a) (" 'Licensed or registered professional' means a ... licensed professional engineer ... or any firm in which such licensed or registered professional practices").

See id. § 150.002(e) ("The plaintiff's failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant.").

See id. § 150.002(a) (affidavit must be "file[d] with the complaint" and be from licensed or registered professional who "is competent to testify," "holds the same professional license or registration as [Jaster]," is licensed or registered in Texas, is "actively engaged in the practice," and "is knowledgeable in the area of practice of [Jaster] and offers testimony based on the person's (A) knowledge; (B) skill; (C) experience; (D) education; (E) training; and (F) practice.").

Id. § 150.002(b).

Jaster designated Holt Engineering, Inc., and BW Detailing LLC, and Prouty subsequently amended his petition to add his own claims against the two. The claims against Holt implicated Chapter 150 and gave rise to a second interlocutory appeal that we have also decided today. See Holt Eng'g, Inc. v. Jordan Prouty , No. 03-17-00103-CV, (Tex. App.-Austin Jan. 12, 2018, no pet. h.) (mem. op.).

See, e.g. Melden & Hunt, Inc. v. E. Rio Hondo Water Supply Corp. , 520 S.W.3d 887, 889, 891 (Tex. 2017).

See, e.g. , Cire v. Cummings , 134 S.W.3d 835, 838-39 (Tex. 2004).

See Walker v. Packer , 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding).

See Levinson Alcoser Assocs., L.P. v. El Pistolon II, Ltd. , 513 S.W.3d 487, 493 (Tex. 2017).

See State v. Shumake , 199 S.W.3d 279, 284 (Tex. 2006).

Lexington Ins. Co. v. Strayhorn , 209 S.W.3d 83, 85 (Tex. 2006).

See In re Office of Atty. Gen., 422 S.W.3d 623, 629 (Tex. 2013) (orig. proceeding).

See ids="7328020" index="18" url="https://cite.case.law/sw3d/422/623/#p629">id.

Melden & Hunt, Inc. 520 S.W.3d at 897 (quoting M-E Eng'rs, Inc. v. City of Temple , 365 S.W.3d 497, 504 (Tex. App.-Austin 2012, pet. denied) ); see also CBM Eng'rs, Inc. v. Tellepsen Builders, L.P. , 403 S.W.3d 339, 346 (Tex. App.-Houston [1st Dist.] 2013, pet. denied) ("[T]he function of the certificate of merit is to provide a basis for the trial court to determine merely that the plaintiff's claims are not frivolous, and to thereby conclude that the plaintiff is entitled to proceed in the ordinary course to the next stages of litigation.").

Melden & Hunt, Inc., 520 S.W.3d at 897 (quoting Couchman v. Cardona , 471 S.W.3d 20, 23 (Tex. App.-Houston [1st Dist.] 2015, no pet.) (citing CBM Eng'rs, Inc. , 403 S.W.3d at 345 )).

Tex. Civ. Prac. & Rem. Code § 150.002(b).

520 S.W.3d 887.

365 S.W.3d 497.

Melden & Hunt, Inc. , 520 S.W.3d at 895 (quoting M-E Eng'rs, Inc. , 365 S.W.3d at 505-06 ).

Id. at 896.

M-E Eng'rs, Inc. , 365 S.W.3d at 506.

Melden & Hunt, Inc. , 520 S.W.3d at 896.

See id. at 892-96 (rejecting argument that would "essentially import[ ] chapter 74's expert report into the certificate-of-merit statute"); see also Dunham Eng'g, Inc. v. Sherwin-Williams Co., 404 S.W.3d 785, 796 n.4 (Tex. App.-Houston [14th Dist.] 2013, no pet.) (observing that Chapter 150 factual-basis requirement "is less onerous than that imposed on, for example, health care liability plaintiffs" under Tex. Civ. Prac. & Rem. Code § 74.351 ).

Quoting Melden & Hunt, Inc. , 520 S.W.3d at 896.

See Melden & Hunt, Inc. , 520 S.W.3d at 893 (citing Benchmark Eng'g Corp. v. Sam Houston Race Park , 316 S.W.3d 41, 48 (Tex. App.-Houston [14th Dist.] 2010 pet. granted, judgm't vacated w.r.m.) (quoting Webster's and Black's Law Dictionary )).

513 S.W.3d 487.

Id. at 494-95.

Levinson Alcoser Assocs., L.P. v. El Pistolon II, Ltd., 513 S.W.3d 487, 495 (Tex. 2017) (Brown, J., concurring).

Melden & Hunt, Inc. , 520 S.W.3d at 896.

M-E Eng'rs, Inc. , 365 S.W.3d at 507.

Levinson Alcoser Assocs., L.P. , 513 S.W.3d at 495 (Brown, J., concurring).

See CBM Eng'rs, 403 S.W.3d at 346 (holding that expert's citation of "structural flitch beam design error" and "omitted 'lateral bracing' " were "factual assertions" that "could have readily been controverted," and sufficed as factual basis for expert's opinion that engineer has committed professional negligence).

365 S.W.3d at 502-04.

Accord Siemens Energy, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Penn. , No. 14-13-00863-CV, 2014 WL 2531577, at *5 (Tex. App.-Houston [14th Dist.] June 3, 2014, pet. denied) (mem. op.) ("To the extent Siemens challenges the competence of Hatch's testimony, neither the statute nor the case law imposes any requirement that averments and opinions in certificates of merit be competent evidence."); Charles Durivage, P.E. v. La Alhambra Condo. Ass'n , No. 13-11-00324-CV, 2011 WL 6747384, at *2 (Tex. App.-Corpus Christi Dec. 21, 2011, pet. dism'd) (mem. op.) ("However, Durivage directs us to no authority, and we find none, establishing that a certificate of merit must fail if its statements are conclusory, or even that it must comply with rules of evidence."); Benchmark Eng'g Corp. , 316 S.W.3d at 47 (observing under 2005 version of statute, "the legislature did not include a requirement that statements in a certificate of merit must be competent as evidence when the affiant provides the 'factual basis' for claims").

See generally Melden & Hunt, Inc., 520 S.W.3d at 896-98. The level of detail in the expert's affidavit in Melden & Hunt is perhaps attributable to the precedent of the court of appeals where the case arose. At the time, the precedent of the Corpus Christi Court of Appeals required the expert to address each theory of recovery in much more detail than is now required by Melden & Hunt . See Garza v. Carmona , 390 S.W.3d 391, 396 (Tex. App.-Corpus Christi 2012, no pet.), abrogated by Melden & Hunt, Inc., 520 S.W.3d 887.

See generally Melden & Hunt, Inc., 520 S.W.3d at 896-98.

See id. at 896.

See CBM Eng'rs, 403 S.W.3d at 346.

See Tex. R. App. P. 47.1.