# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00954-CV

**Carlson, Brigance & Doering, Inc., and LJA Engineering, Inc., Appellants**

**v.**

**Michael S. Compton, Jenifer Hammock, and Kyle Hammock, Appellees**

### FROM THE 335TH DISTRICT COURT OF BASTROP COUNTY
### NO. 540-335, THE HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING

## NO. 03-19-00955-CV

**Carlson, Brigance & Doering, Inc., and LJA Engineering, Inc., Appellants**

**v.**

**Lynette Lee, Appellee**

### FROM THE 335TH DISTRICT COURT OF BASTROP COUNTY,
### NO. 423-5024, THE HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING

**Carlson, Brigance & Doering, Inc., and LJA Engineering, Inc., Appellants**

**v.**

**Tim Murphy and Maria Murphy, Individually, and d/b/a Bastrop Signs and Banners, Appellees**

**FROM THE 335TH DISTRICT COURT OF BASTROP COUNTY**
**NO. 540-21, THE HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING**

**Carlson, Brigance & Doering, Inc., and LJA Engineering, Inc., Appellants**

**v.**

**Jo Ann Sullivent, Appellee**

**FROM THE 335TH DISTRICT COURT OF BASTROP COUNTY**
**NO. 542-335, THE HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Chapter 150 of the Civil Practice and Remedies Code requires that a sworn "certificate of merit" accompany the plaintiff's complaint in any case "arising out of the provision of professional services" by engineers and certain other "licensed or registered professional[s]." Tex. Civ. Prac. & Rem. Code § 150.002(a). In these four interlocutory

appeals, engineering firms Carlson, Brigance & Doering, Inc. (CBD), and LJA Engineering, Inc. (LJA), contend that the district court abused its discretion by denying their respective motions to dismiss for failing to file a certificate of merit pursuant to Chapter 150. Concluding the district court did not abuse its discretion, we will affirm.

**BACKGROUND**

These appeals arise out of litigation over the development and construction of Hunter's Crossing, a 250-acre mixed-use real estate development in Bastrop. The lead developer, Forestar (USA) Real Estate Group, hired CBD to design and supervise the construction of the development's storm water drainage system. CBD provided these services through Timothy Holland, a licensed engineer. After construction was complete, Holland affixed his seal to sections 5B and 3E of the final plat of Hunter's Crossing. *See* Tex. Occ. Code § 1001.401(b) (providing that "[a] plan, specification, plat, or report issued by a license holder for a project to be constructed or used in this state must include the license holder's seal placed on the document"). Those sections state that the drainage system was constructed according to the project design drawings and complied with municipal and Federal Emergency Management Agency (FEMA) regulations for the 100-year flood plain.[1] Additionally, the plat states that the drainage system would contain a 100-year flood.

In 2015, heavy rainfall flooded several properties in or near the development, including those of appellees Michael S. Compton, Jenifer Hammock, Kyle Hammock, Lynette Lee, Tim Murphy, Maria Murphy, and Jo Ann Sullivent (collectively, the Owners). In

---

[1] The "100-year flood plain" refers to what FEMA calls a Special Flood Hazard Area, "defined as an area of land that would be inundated by a flood having a one-percent chance of occurring in any given year." *Nast v. State Farm Fire & Cas.*, 82 S.W.3d 114, 119 n.2 (Tex. App.—San Antonio 2002, no pet.).

3

four lawsuits, the Owners sued CBD and multiple other entities involved in the development and construction of Hunter's Crossing. The Owners alleged in substantively identical pleadings that, contrary to the statements on the plat, the drainage-system designs for Hunter's Crossing did not comply with applicable flood-plain regulations. The designs allegedly failed to account for runoff from land to the north of the development, especially from Burleson Crossing, a 500-acre development located north of Hunter's Crossing across a highway. Burleson Crossing's drainage system allegedly funnels runoff under the highway separating the developments and into Hunter's Crossing's drainage system. Further compounding the alleged problem, and again contrary to the plat, the Hunter's Crossing system allegedly was not constructed according to the project designs. Instead, most of the drainage system's components are allegedly "incomplete, missing[,] or undersized[.]" The Owners also sued LJA, the designer of Burleson Crossing's drainage system. They alleged that LJA failed to verify the "existing conditions and inadequacies of the downstream drainage system."

To comply with Chapter 150's certificate-of-merit requirement, the Owners attached to each of their petitions affidavits from Adrian Rosas, a professional engineer. Rosas averred that he is competent to testify and described his background and qualifications, including his current Texas licensure and that he is "actively engaged in the same practice of engineering as Timothy Holland." He averred the following in support of the Owners' claims against CBD:

> On January 26, 2017 and April 10, 2017, I personally visited the Hunter's Crossing and Burleson Crossing projects in Bastrop, Texas. Before, during, and after the site visits I performed the following actions:
>
> - Reviewed record information for the project areas
>
> - Interviewed property owners
>
> - Reviewed FEMA information for the project areas

4

Timothy Holland, P.E., was responsible for (including but not limited to):

- Residential storm water design for Hunter's Crossing sections

- Review and inspection for the adequacy of construction work performed by the contractor to be represented on the record drawings.

Based on my observations and evaluations, I have concluded that Tim Holland, P.E. was negligent and did not follow the standard of care for this engineering work by failing to:

- Properly evaluate the existing conditions downstream prior to design and subsequent construction

- Properly present the detail required to define the improvements necessary to manage storm water runoff directed toward the subdivision from offsite land areas and the adequacy of onsite collection for discharge without impact to existing homes.

- Confirm the accuracy of the record drawing representations

The factual basis for my opinion includes, but is not limited to, the following record information:

- Project area drainage studies

- FEMA documentation for the project area.

Rosas filed a similar but not identical affidavit concerning the Owners' claims against LJA.

After the four lawsuits were consolidated before the district court, CBD filed identical motions to dismiss for noncompliance with chapter 150. *See* Tex. Civ. Prac. & Rem. Code § 150.002(e) ("A claimant's failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant."). CBD argued that Rosas's affidavit does not comply with Chapter 150 because it does not mention CBD, because Rosas is not knowledgeable in Holland's practice area, and because he failed to lay out the factual basis for his conclusions. After CBD moved to dismiss but before the scheduled hearing on the motions,

5

the Owners amended their pleadings to allege that CBD is vicariously liable for Holland's negligence. LJA joined each of CBD's motions. The district court denied their motions by separate orders, and these appeals ensued. *See id.* § 150.002(f) ("An order granting or denying a motion for dismissal is immediately appealable as an interlocutory order."). We have consolidated these appeals for briefing and submission.

## LEGAL STANDARDS

Chapter 150 provides that a sworn certificate of merit must be "file[d] with the complaint" in any action "arising out of the provision of professional services" by a licensed engineer and certain other "licensed or registered professional[s]." *Id.* § 150.002(a). The affiant must have certain qualifications, *id.*, and the certificate:

> shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim.

*Id.* § 150.002(b). The trial court examines the certificate on motion of the defendant to determine whether the certificate "sufficiently demonstrates that the plaintiff's complaint is not frivolous." *Melden & Hunt, Inc. v. East Rio Hondo Water Supply Corp.*, 520 S.W.3d 887, 896 (Tex. 2017).

We review an order granting or denying a motion to dismiss pursuant to chapter 150 for an abuse of discretion. *Jaster-Quintanilla & Assocs. v. Prouty*, 549 S.W.3d 183, 187 (Tex. App.—Austin 2018, no pet.). A trial court abuses its discretion when it fails to analyze or apply the law correctly or, "with regard to factual issues or matters committed to its discretion,

6

the trial court could reasonably have reached only one decision and failed to do so." *Id.* at 188 (citing *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding)).

## ANALYSIS

CBD argues that the district court abused its discretion because Rosas's affidavit does not apply to CBD, Rosas is not qualified to execute an affidavit in this case, and his affidavit fails to adequately set out the factual basis for his conclusions. LJA has filed a brief joining in CBD's second and third issues. *See* Tex. R. App. P. 9.7 ("Any party may join in or adopt by reference all or any part of a brief, petition, response, motion, or other document filed in an appellate court by another party in the same case.").

### Rosas's Affidavit Applies to CBD

CBD initially argues that Rosas's affidavit is insufficient because it only mentions Holland. Under CBD's interpretation of Chapter 150, the certificate must address each "licensed or registered professional" whose conduct is implicated in the suit. The Owners[2] respond that this Court previously rejected this interpretation of Section 150.002. *See M-E Eng'rs v. City of Temple*, 365 S.W.3d 497 (Tex. App.—Austin 2012, pet. denied).

We agree with the Owners. In *M-E Engineers,* the City of Temple had contracted with M-E to provide certain engineering services in designing and constructing the City's new police headquarters. *Id.* at 499. The City subsequently sued M-E and its employee who worked on the project—also an engineer—for damages based on flaws in the design and construction of the building's heating, ventilation, and air conditioning system. *Id.* The City attached to its

---

[2] All appellees except for Kyle Hammock, an appellee in Cause No. 03-19-954-CV, have jointly filed a brief. Hammock, who is pro se, has not filed a brief with this Court to date.

petition a sworn certificate of merit attesting to the alleged design and construction deficiencies and opining they resulted from the engineer's negligence. *Id.* However, the certificate did not expressly mention the engineer's firm, M-E. M-E moved to dismiss on the ground that chapter 150 required that the certificate "address[], by name, each of the 'licensed or registered professionals' whose conduct is implicated in its suit." *Id.* at 505. Before the trial court held a hearing on the motions, the City amended its pleading to allege that M. E. was vicariously liable for the errors and omissions of its employee. *Id.* at 499. The trial court denied the motion, and M-E appealed.

M-E made the same argument before this Court, relying particularly on chapter 150's definition of a "licensed or registered professional" as either a professional or "any firm in which such licensed . . . professional practices." *Id.* at 505 (quoting Tex. Civ. Prac. & Rem. Code § 150.001(1-c)). Thus, M-E reasoned, the certificate must address the professional errors or omissions of M-E and its employee separately. We disagreed because chapter 150, when read as a whole, "reveals a core focus on ascertaining and verifying the existence of errors or omissions in the professional services provided by a 'licensed or registered professional.'" *Id.* To that end, chapter 150 provides that the "certificate must identify and verify the existence of any professional errors or omissions that are elements or operative facts under any legal theory on which the plaintiff intends to rely to recover damages." *Id.* at 506. But nothing in Chapter 150 "require[s] that a certificate address operative facts other than th[ose] professional errors or omissions." *Id.* Thus, Chapter 150 required only that the City file a certificate attesting to the engineer's professional errors and omissions because the City claimed damages from M-E based on those same errors and omissions. *Id.* And there being no dispute that the certificate satisfied that requirement, we affirmed the district court's ruling. *Id.*

8

CBD does not directly dispute this analysis but suggests that the Court erred in *M-E Engineers* by considering the City's live pleadings. *See id.* at 507 n.3 ("In deciding a motion to dismiss under chapter 150, we consider the live pleadings at the time of the hearing on the motion to dismiss."). Specifically, CBD faults us for rejecting M-E's argument that the City "is bound by its original petition." *See id.* CBD argues that this conflicts with the statutory command that the certificate must be "file[d] with the complaint." Tex. Civ. Prac. & Rem. Code § 150.002(a). CBD interprets this to means that whether a complaint satisfied Section 150.002 "must be decided based on the first filed petition that implicates chapter 150." In support, CBD cites cases holding that amended petitions were irrelevant to determining whether chapter 150 required the plaintiff to file a certificate. *See, e.g.*, *AMEC Foster Wheeler USA Corp. v. Goats*, No. 09-18-00477-CV, 2019 WL 3949466, at \*5 (Tex. App.—Beaumont Aug. 22, 2019, no pet.) (mem. op.) (holding amended pleading alleging defendant had "non-engineering" role was irrelevant to determining whether certificate was required with original petition). Although we agree that a plaintiff must file a certificate with the first petition asserting claims subject to Chapter 150, *see TIC N. Cent. Dall. 3, L.L.C. v. Envirobusiness, Inc.*, 463 S.W.3d 71, 79 (Tex. App.—Dallas 2014, pet. denied), that is not what CBD argues here. CBD explicitly urges us to interpret Section 150.002 to require a plaintiff to "contemporaneously file an affidavit that identifies the licensed professional the plaintiff sued." In this case, that would mean that the certificate must address, by name, each licensed or registered professional whose conduct is implicated in the suit, including CBD and Holland. This is essentially the same interpretation of Section 150.002 that we rejected in *M-E Engineers*. *See* 365 S.W.3d at 505 (rejecting argument that certificate must "address[] by name, each of the 'licensed or registered professionals' whose conduct is implicated in its suit"). In effectively asking us to revisit that decision, CBD relies

9

heavily on an unpublished case that allegedly reached the opposite conclusion. *See DHM Design v. Morzak*, No. 05-15-00103-CV, 2015 WL 3823942, at \*3 (Tex. App.—Dallas June 19, 2015, pet. denied) (mem. op.) ("The certificate must identify the particular defendant and that defendant's specific conduct."). But the Supreme Court subsequently adopted *M-E Engineers*'s reasoning and confirmed that chapter 150 merely "obligates the plaintiff to get an affidavit from a third-party expert attesting to the defendant's professional errors or omissions and their factual basis." *Melden & Hunt*, 520 S.W.3d at 895–96 (citing *M-E Eng'rs*, 365 S.W.3d at 505–06). Although CBD contests Rosas's qualifications and his certificate's factual basis, it does not dispute that that Rosas attested to the alleged errors and omissions underlying the Owners' claim for damages from CBD. We therefore overrule CBD's first issue.

**Rosas's Qualifications**

Next, CBD contends that Rosas lacks the necessary qualifications to opine on Holland's design of the Hunter's Crossing drainage system. A sworn certificate of merit must come from a third-party expert who holds the same professional license as the defendant, is actively engaged in the practice, and "is knowledgeable in the area of practice of the defendant." *See* Act of June 19, 2009, 81st Leg., R.S., ch. 789, § 2, 2009 Tex. Gen. Laws 1991, 1992 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code § 150.002(a)(2)–(3)).[3] Rosas averred in his affidavit that he is "actively engaged in the same practice of engineering as

---

[3] The Legislature amended Chapter 150 in the 2019 session to provide that the certificate must be executed by a professional who "practices in the area of practice of the defendant." Act of May 15, 2019, 86th, Leg., R.S., ch. 661, § 2, 2019 Tex. Sess. Law Serv. ch. 661 (codified at Tex. Civ. Prac. & Rem. Code § 150.002(a)). That amendment does not apply to these appeals because the Owners filed suit before the amendment's effective date. *See id.* § 3 (providing that amendments to Chapter 150 apply "only to an action or arbitration proceeding commenced on or after" June 10, 2019).

Timothy Holland." CBD dismisses this statement as irrelevant because Rosas failed to specifically address Holland's practice area of "residential storm water design."

CBD contends this case is controlled by the Supreme Court of Texas's *Levinson* decision. *See Levinson Alcoser Assocs., L.P. v. El Pistolon II, Ltd.*, 513 S.W.3d 487 (Tex. 2017). In that lawsuit against registered architects, the plaintiff's expert filed an affidavit averring that he is a registered architect with an "an active architecture practice in the State of Texas today." *Id.* at 492. The affidavit did not include any information about his knowledge of the defendants' area of practice. *Id.* The court of appeals held that the trial court could infer that the expert possessed the requisite knowledge from his statements that he is a registered architect and actively engaged in the practice. *Id.* at 493. The Supreme Court disagreed because the statute's knowledge requirement "is not synonymous with the expert's licensure or active engagement in the practice; it requires some additional explication or evidence reflecting the expert's familiarity or experience with the practice area at issue in the litigation." *Id.* at 494.

CBD's argument that Rosas's statement is equivalent to the one in *Levinson* ignores the affidavit's two preceding sentences, in which Rosas stated that he is a licensed engineer and president of a licensed engineering firm. Read in that context, the district court could reasonably understand Rosas to mean that his practice of engineering also involves designing drainage systems for residential areas. The district court could also have considered other parts of the certificate that tend to confirm Rosas's knowledge concerning residential storm drain design. *See id.* (agreeing that "expert's knowledge may be inferred" but requiring more than evidence of licensure and active practice); *Elness Swenson Graham Architects, Inc. v. RLJ II-C Austin Air, LP*, No. 03-10-00805-CV, 2011 WL 1562891, at *2 (Tex. App.—Austin Apr. 20, 2011, pet. denied) (mem. op.) (determining that certificate's content demonstrated affiant's knowledge of requisite practice area). The certificate reflects that in forming his opinions, Rosas reviewed records from construction of

11

the Hunter's Crossing and Burleson Crossing projects, reviewed FEMA information for both areas, and visited the sites to evaluate the function of the drainage system. Based on those observations and evaluations, Rosas identified specific errors or omissions by Holland that, in Rosas's opinion, resulted in the flooding. Based on these facts, the district court did not abuse its discretion in determining that Rosas was knowledgeable in Holland's practice area. *See M-E Eng'rs*, 365 S.W.3d at 503 (holding expert's analysis and description of eleven specific problem in building's HVAC system confirmed his statement that he practices in design of same type of systems). We overrule CBD's second issue.

**Factual Basis**

In its final issue, CBD contends that Rosas failed to set out the factual basis for his conclusions. Chapter 150 requires that the certificate identify any professional error or omission underlying the plaintiff's claims for damages "and the factual basis for each such claim." Tex. Civ. Prac. & Rem. Code § 150.002(b).

CBD contends that the "factual basis" language requires the affiant to set out "the events or circumstances giving rise to the professional errors or omissions." *See Melden & Hunt*, 520 S.W.3d at 893. In CBD's estimation, Rosas's affidavit is impermissibly "conclusory" in that it lacks "meaningful detail" concerning the Owners' theories of recovery, their damages, and how Holland's alleged acts or omissions caused those damages. *See Levinson*, 513 S.W.3d 487, 495 (Brown, J., concurring) (agreeing to Chapter 150 dismissal but on basis that affidavit was "conclusory" and its "text could be copied and pasted into any certificate of merit without regard to the particular facts of the case"). Although CBD is correct that chapter 150 requires that the certificate set out the basis for the affiant's conclusions, it does not impose as high a burden as

CBD contends. The "factual basis" "required is merely that which underlies the asserted professional error or omission to which the affiant attests; the affiant need not 'address the elements of the plaintiff's various theories or causes of action.'" *Jaster-Quintanilla*, 549 S.W.3d at 191 (quoting *Melden & Hunt*, 520 S.W.3d at 896). Nor must the certificate address "operative facts other than the professional errors or omissions that are the focus of the statute." *Id.* (quoting *M-E Eng'rs*, 365 S.W.3d at 507).

In the certificate, Rosas identified, based on his review of the relevant documents, Holland's negligence and other errors, including the failure to: (1) "properly evaluate the existing land conditions before designing the system," (2) obtain "the detail required to define the improvements necessary to [the drainage system to] manage storm water runoff directed toward [Hunter's Crossing] from offsite," and verify the "adequacy of onsite collection for discharge" without impacting existing residences, and (3) confirm the accuracy of the project's "record drawing representations." These are not mere conclusions, let alone ones that could be "copied and pasted into any certificate of merit without regard to the particular facts of the case." *Cf. Levinson*, 513 S.W.3d at 495 (Brown, J., concurring). Rather, Rosas made assertions of fact, capable of being controverted with contrary evidence, regarding the causes of specific failures in the design of the Hunter's Crossing drainage system. Thus, we cannot conclude that the district court abused its discretion in concluding these statements satisfy section 150.002's "factual basis" requirement. *See Jaster-Quintanilla*, 549 S.W.3d at 192 (holding expert's statements attributing collapse to design defect in "canopy structure" that "fails to achieve the necessary design" were not conclusory but instead sufficed as "factual basis" for expert's opinion that engineer committed professional negligence); *CBM Eng'rs v. Tellepsen Builders*, 403 S.W.3d 339, 346 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (holding expert's citation of "structural

13

flitch beam design error" and "omitted 'lateral bracing'" sufficed as factual basis for expert's opinion that engineer had committed professional negligence). We overrule CBD's third issue.[4]

## CONCLUSION

Having found no abuse of discretion, we affirm the district court's orders denying the motions to dismiss.

_____

Edward Smith, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed: December 8, 2020

---

[4] Because LJA asserts that the facts underlying CBD's second and third issues are "identical" to those in LJA's appeal, we overrule LJA's two issues for the reasons discussed.